In re the MARRIAGE OF Deborah A. GOLDMAN, f/k/a Deborah A. Greenwood, petitioner, Appellant,

v.

Mark E. Greenwood, Respondent.

No. A06–1110.

Court of Appeals of Minnesota.

Jan. 2, 2007.

Richard D. Goff, Minneapolis, MN, and Felipe Orner, Flushing, NY, for appellant.

Suzanne M. Edmiston, Edina, MN, for respondent.

Considered and decided by SHUMAKER, Presiding Judge; HUDSON, Judge; and CRIPPEN, Judge.

## OPINION

CRIPPEN, Judge.*

This appeal is from a district court order denying the sole physical custodian's motion for removal of the parties' child to New York City, the city where the custodian's spouse lives and works and where the child, soon to be age 11, may enjoy greater social and educational opportunities, coinciding with his Orthodox Jewish faith and practice. Appellant challenges, as a matter of law, the district court's application of Minn.Stat. § 518.18 (2004) to her removal motion and disputes the district court's analysis of evidence she submitted to establish a prima facie case for removal. Because the arguments advanced by appellant have merit, we reverse and remand for an evidentiary hearing under Minn. Stat. Ann. § 518.175, subd. 3 (West, Westlaw through 2006 Regular Session).[1]

## FACTS

Appellant Deborah Goldman and respondent Mark Greenwood were married in 1993 and divorced by a June 2002 judgment. The parties are parents of I.G., a son born on January 30, 1996.

While divorce proceedings were pending in 2001, the district court determined disputed custody and parenting time issues in a memorandum decision awarding appellant sole physical custody of the child, who was then age 5. The court rejected appellant's proposal to move with the child to Boston, Massachusetts, to permit appellant to seek better employment and be closer to her family. The memorandum decision also stated what it labeled a "*LaChapelle* locale restriction," limiting appellant's freedom to remove the child from Minnesota. *See LaChapelle v. Mitten,* 607 N.W.2d 151, 162–63 (Minn.App.2000) (permitting custody award conditioned on parent's continuing residence in state), *review denied* (Minn. May 16, 2000).

Following child custody litigation, after the parties failed to conclude the matter by a stipulation or formation of a parenting plan, the district court formulated a 2002 judgment "award[ing] sole physical custody [of I.G.] ... subject to reasonable parenting time by [r]espondent." Both the judgment's findings of fact and conclusions of law "incorporated by reference" the court's 2001 memorandum decision on child custody issues, including the root of this appeal, its 2001–02 court-created removal restriction.

Appellant contends that the 2001 removal restriction is not adequately certain,[2] but by reading the 2001 memorandum decision with the 2002 judgment, we are rea-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. Minn.Stat. § 518.175 (2004) and Minn.Stat. § 518.18 (2004) were both amended by 2006 legislation that became effective on August 1, 2006. 2006 Minn. Laws ch. 280 §§ 13 & 14 (amending statutes); 2006 Minn. Laws ch. 280 §§ 44, 45 (reciting effective dates for various portions of 2006 Minn. Laws ch. 280, but not mentioning an effective date for §§ 13, 14); Minn.Stat. § 645.02 (2004) (stating effective date for legislative acts is August 1 after enactment unless a different date is specified). Because the Minnesota Revisor of Statutes has not yet published the 2006 version of statutes, for ease of reference we cite the amended statutes as the 2006 Minnesota Session laws indicate they will be codified at Minn.Stat. § 518.175 (2006) and Minn.Stat. § 518.18 (2006).

2. Specifically, appellant claims that the restriction "does not properly identify findings of fact vis-à-vis conclusions of law supporting the basis for the order...." We note that appellant failed to make this validity argument to the district court. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (permitting appellate courts to decline considering issues that a party failed to raise with the district court). In any event, we find sufficient certainty in the court's judgment and memorandum to establish a child-residence demand.

sonably certain that the following statement accurately represents the district court's custody award:

[Appellant] is hereby awarded sole physical custody of the minor child, namely: [I.G., six at the time of the 2002 judgment; eleven on January 30, 2007] subject to reasonable parenting time by Respondent.... [without] a major change in [I.G.'s] daily routine ... *as long as* [a.] [appellant] remains available to parent him in Minnesota, [b.] a specific schedule ensures ample parenting time for [respondent], [c.] both parents engage in counseling, and [d.] a parenting consultant or parenting time expeditor is appointed to help reduce disputes over daily care and access issues.

In addition to awarding appellant sole physical custody, the 2001 memorandum reserved the question of I.G.'s legal custody but observed appellant's "greater disposition to continue [I.G.]'s religious training," demanded a sharing of information, and appointed a "parenting consultant."

In 2006, appellant moved the district court for permission to relocate with I.G. to New York City, where appellant's fiancé (now spouse) lives. Because this request was at odds with the judgment's custody provision requiring that appellant remain available to her son in Minnesota, appellant both moved the district court to alter this provision of the judgment's custody provision and sought the court's permission for the proposed move.

Appellant submitted 15 affidavits in support of her motions. The child's teachers, baseball coach, and appellant's neighbors were among those who submitted affidavits. In her own affidavit, appellant pointed to I.G.'s improved opportunity to live as an Orthodox Jew and further his religious education in New York City, as well as his psychological adjustment and his changing relationships with respondent's other chil-

dren. Appellant also highlighted I.G.'s limited opportunity to live his religious life and further his religious education in Minneapolis. Appellant cited her own engagement and the fact that her (then) fiancé lived and worked in New York City in support of her motion and asserted that the proposed move was in I.G.'s best interests. Respondent opposed appellant's motion, arguing that appellant failed to make a "prima facie showing" for relief conflicting with the removal provision in the 2002 judgment.

After a hearing, the district court denied appellant's plea to alter the removal restriction and, without a further evaluation or evidentiary hearing, denied her permission to remove I.G. to New York. Relying partly on an unpublished appellate decision, the district court treated appellant's motion as a motion to modify the custody provision of the judgment and imposed upon appellant the custody modification burdens provided in Minn.Stat. § 518.18 (2004) (amended 2006) rather than the requirements for residential removal addressed by Minn.Stat. § 518.175, subd. 3 (2004) (amended 2006). Assessing appellant's supporting affidavits, the court concluded that appellant failed to present a prima facie case of changed circumstances sufficient to require an evidentiary hearing on the question of whether she could modify the judgment's removal provision that she remain in Minnesota.

Although the court observed that an endangerment analysis might be unnecessary, the court determined that appellant failed to present a prima facie case of endangerment under Minn.Stat. § 518.18(d)(iv). Using still another standard of section 518.18(d)(iv), the court also concluded that appellant failed to "present[ ] a prima facie case that the advantages associated with the proposed removal ... outweigh the harm to be caused by

the change." Notwithstanding these holdings, the court confirmed that appellant remains the parent with the "greater capacity and disposition to continue educating and raising [I.G.] in his religion" and has "attended to [I.G.]'s religious training, along with his structured social/extracurricular activities."

To challenge the district court's ultimate decision to deny removal without holding an evidentiary hearing, appellant primarily disputes the court's application of the custody-modification provisions of Minn.Stat. § 518.18 and its analysis of her asserted prima facie case for removal.

## ISSUES

1. Does Minn.Stat. § 518.18 (2006) govern appellant's motion for removal?

2. Did the district court err in its determination that appellant failed to show a prima facie case for removing the child?

3. Can this court act on appellant's claim of district court bias?

## ANALYSIS

The question of whether the district court correctly applied the law is reviewed by this court de novo. *In re A.R.M.*, 611 N.W.2d 43, 47 (Minn.App.2000).

### 1.

■ Appellant initially contends that the district court erred in reasoning that removal to New York City, because it conflicts with the court's 2001 removal restrictions, is governed by Minn.Stat. § 518.18 regarding custody modification rather than Minn.Stat. § 518.175 regarding removal of a child's residence from Minnesota. As previously stated, portions of the statutes at issue in this case were recently amended, effective on August 1, 2006. *See supra* note 1.

■ Generally, appellate courts apply the law "as it exists at the time they rule on a case...." *Interstate Power Co. v. Nobles Co. Bd.*, 617 N.W.2d 566, 575–76 (Minn.2000) (noting that exceptions to this general rule exist when "rights affected by the amended law were vested before the change in the law" or application of changed law would produce manifest injustice or conflict with statutory direction or legislative history). Respondent does not contend that the 2002 judgment establishes vested rights that are altered by the recent amendments. And because other *Interstate* exceptions also have not been asserted, we apply the relevant statutes as amended.

Minn.Stat. § 518.175 (2006) governs proceedings involving parenting time for the noncustodial parent. Subdivision 3(a) prescribes the manner in which the custodian must seek to remove the child:

> The parent with whom the child resides shall not move the residence of the child to another state except upon order of the court or with the consent of the other parent, if the other parent has been given parenting time by the decree. If the purpose of the move is to interfere with parenting time given to the other parent by the decree, the court shall not permit the child's residence to be moved to another state.

Minn.Stat. § 518.175, subd. 3(a).

The central part of Minn.Stat. § 518.18 (2006) addresses modification of orders determining child custody and provides that the district court

> shall not modify a prior custody order ... which specifies the child's primary residence unless it finds, upon the basis of facts ... that have arisen since the prior order or that were unknown to the court at the time of the prior order, that a change has occurred in the circumstances of the child or the parties and

that the modification is necessary to serve the best interests of the child. Minn.Stat. § 518.18(d).

The Minnesota Supreme Court put Minn.Stat. § 518.175, subd. 3 (1982) at the threshold of its analysis of the statutory scheme affecting requests for removing the residence of a child. *Auge v. Auge*, 334 N.W.2d 393, 397 (Minn.1983) (observing that the statute permits denial of removal only when the custodian's purpose is to interfere with visitation rights and denial is not proper "simply because the move may require an adjustment in the existing pattern of visitation"). *Auge* further limited restrictive implications of Minn.Stat. § 518.175 by providing that the proponent of change is entitled to a presumption favoring removal and held that the opponent of the move has the burden of proof under Minn.Stat. § 518.18(d) (1982).[3] *Auge*, 334 N.W.2d at 399.

The 2006 amendment of section 518.175 eliminates the so-called *Auge* presumption, establishing that the proponent now must show cause for a removal but that the best interests of the child are to govern the court's decision. Minn.Stat. § 518.175, subd. 3 (2006). But the language of Minn.Stat. § 518.18(d) (2006) on the proposition of changing custody to the other parent, which no longer prompts a presumption for removal, also fails to diminish the reality that Minn.Stat. § 518.175 (2006) governs the standards and burden of proof for the proponent of removal.

The district court examined the state of the law before the 2006 amendment of Minn.Stat. § 518.175 and concluded that this case did not warrant application of the *Auge* removal presumption in favor of appellant because the judgment stated that removal of the child from Minnesota would

not be in the child's best interests. On appeal, the court's non-application of the *Auge* removal presumption does not require attention because of the amendment of Minn.Stat. 518.175, establishing that appellant has the burden to show that removal is in the child's best interest. But the district court also found that the family-unit preservation rationale underlying the *Auge* decision should extend to a noncustodial parent whose contact with the child had been considered important enough to prompt the judgment's earlier use of a removal restriction, and this determination does require our attention.

The district court determined that the proposed removal following the 2001 location restriction, which the court saw as an "integral part of the prior 'custody order,'" constituted a change (or modification) of the judgment's custody provision that should be governed by Minn.Stat. § 518.18 (2004). The court reasoned that application of section 518.18 served the ends of *Auge* by "avoiding *de novo* considerations" of a custody determination; by preserving the child's family-unit stability; and by "minimizing judicial interference" with family decisions. The court noted that *Auge* was premised on consistency, and reasoned that "parents seeking to remove locale restrictions should be required to meet a greater burden of proof than a simple, *de novo* best interests burden." The court also noted that "the Court already determined that [r]espondent is best-suited to have physical custody of [I.G.] if [appellant] leaves the state." The several parts of this analysis require our review.

*The Statutes*

The district court determined that Minn.Stat. § 518.18 should be read broadly, to

---

**3.** As relevant to this opinion, the legislature did not amend Minn.Stat. § 518.175 from the time *Auge* was decided until 2006. Therefore, courts continued to apply the *Auge* holdings.

*See, e.g., Rutz v. Rutz*, 644 N.W.2d 489, 494 (Minn.App.2002), *review denied* (Minn. July 16, 2002).

include any changes in the custody-order language, because it deals with modifying a "custody order" or a "custody arrangement." Minn.Stat. § 518.18(d). But this section, historically and currently, addresses a change in placement, a change in physical custody from one household to another. And the statute instructs the district court to "retain the custody arrangement or the parenting plan provision specifying the child's primary residence that was established by the prior order unless" the situation presents one of four circumstances. *Id.*

Those four circumstances include the case of the child who is "integrated into the family of the petitioner with the consent of the other party" and the case presenting changes in the "child's environment." Minn.Stat. § 518.18(d)(iii), (iv). We conclude that these provisions confirm the understanding that the statute's scope is confined to the change of provisions "specifying the child's primary residence."

We have had prior occasion to determine that Minn.Stat. § 518.18 addresses "substantial" changes in visitation, for example, where a parent "proposed to alter an arrangement from equal care to one where she has custody during the entire school year." *Lutzi v. Lutzi*, 485 N.W.2d 311, 315–16 (Minn.App.1992). In contrast, we have determined that visitation alterations accompanying change of the sole custodial parent's residence do not constitute the "restriction" of visitation that is limited by statute in the same fashion as changes governed by section 518.18. *Danielson v.*

*Danielson,* 393 N.W.2d 405, 407 (Minn. App.1986).

Coinciding with our review of Minn.Stat. § 518.18, the language of Minn.Stat. § 518.175 (2006) provides governing provisions for enumerated changes without reference to whether there are related conditions to the award of sole custody stated in a judgment. Section 518.175 governs these changes notwithstanding removal language in the judgment because the section represents the legislature's specific determination on the subjects the statute addresses. Subdivision 3, as already observed, declares the standard on removal of the child from the state. Similarly, demonstrating the same effect as subdivision 3, subdivision 5 addresses and governs modifications of clauses in an order or judgment that provide for parenting time or a parenting plan. Minn.Stat. § 518.175, subd. 5.

We find no basis for departing from the foregoing statutory scheme to permit court-imposed limits on removal that put that relief beyond the reach of sole physical custodians in circumstances such as appellant's.[4]

*Judgment Said to Address Future Change of Custody*

In the course of its reasoning, the district court reflected on its statement in the judgment's custody provision that it would award "sole physical custody" to respondent if its location restriction was "found wanting." The court viewed this prior declaration as a continuing basis for respondent to assume full custody if the child were removed. But the found-wanting statement in the 2001 memorandum

---

4. The district court and the parties on appeal discussed an unpublished decision of this court determining that the time limits of Minn.Stat. § 518.18(a), (c) governed a motion to change restrictions on removal of a child from Minnesota. This court's unpublished decisions lack precedential value. Minn.Stat.

§ 480A.08, subd. 3 (2004). And the analysis in the immediate opinion is confined to employment of the standards of Minn.Stat. § 518.18(d) and is not intended to comment in respect to whether section 518.18(a), (c) affect a removal restriction.

deals facially with the prospect of immediate nullification of the removal restriction; the statement did not suggest, nor could it, that custody of the child would automatically change if appellant had future cause to move with the child. *See Angelos v. Angelos*, 367 N.W.2d 518, 519 (Minn.1985) ("[Because] domestic relationships, by their nature, continue under the jurisdiction of the court virtually throughout the lives of the parties .... the legislature specifically authorized modification [in child welfare matters].").

*Presumption against Custodian*

Finally, the district court determined that the application of Minn.Stat. § 518.18 (2004) to this situation complies with the *Auge* rationale of protecting the family unit. But we are concerned by the court's analysis because Minn.Stat. § 518.18 imposes a higher threshold on the moving party than Minn.Stat. § 518.175, meaning that, despite the district court's extensive discussion of *Auge* and its 518.18–based considerations, the court's analysis functionally turns *Auge* on its head and uses the holding as authority for a presumption favoring the opponent of change and opposing the sole custodian. Contrary to the district court's rationale, *Auge* does not prescribe non-interference in that form. Rather, *Auge* established a preference because of the importance of a child's relationship with his primary custodial parent under the scheme of Minnesota's child custody statutes, a circumstance enlarged here by over five years of primary caretaking since sole custody was placed by the district court in 2001.[5] *Auge*, 334 N.W.2d at 399.

Appellant's circumstances here are no different from those of appellant in *Auge;* both removal proponents are sole custodi-

5. Historically, the focus of Minnesota's custody law has been to protect the stability of the relationship between a child and that child's primary parent. *See, e.g., Larson v. Dunn*, 460 N.W.2d 39, 49 (Minn.1990) (Popovich, J., dissenting) (noting limitations on custody modification created by Minn.Stat. § 518.18 are a legislative acknowledgment "[of] the importance of maintaining a consistent and stable custody situation"); *Sefkow v. Sefkow*, 427 N.W.2d 203, 212 (Minn.1988) (recognizing that *Pikula v. Pikula*, 374 N.W.2d 705, 711 n. 1 (Minn.1985) both noted "four of the nine [best-interests] criteria [of Minn.Stat. § 518.17, subd. 1] rest on the centrality of continuity of care and environment" and "emphasized the importance of stability in custody determinations"); *Auge*, 334 N.W.2d at 399 (quotation omitted) (stating courts should restrict their interference in familial decisions because "continuity and stability in relationships are important for the child"); *Geibe v. Geibe*, 571 N.W.2d 774, 780 (Minn. App.1997) ("Minnesota law rests on a presumption that stability of custody is in a child's best interests."). Commentators refer to this relationship in terms of "[a]ttachment theory[,]" and continue to forcefully confirm the importance to the child of maintaining the stability of that relationship. *See* Carol S. Bruch, *Sound Research or Wishful Thinking in Child Custody Cases? Lessons from Relocation Law*, 40 Fam. L.Q. 281, 285 (2006).

As the supreme court found when approaching the *Auge* case, attachment-theory literature and statutes support "maintaining the child's household composition in relocation cases." *Id.* at 286; *see id.* at 313 (concluding that a "child-centered inquiry" inescapably takes into account that "children's access to each parent will change over time" and that removal restrictions may fail to provide child-centered results). *See also Auge*, 334 N.W.2d at 396 n. 3 (explaining that the modification statute has evident roots in the attachment principle "that interruption of the parent-child relationship may be seriously detrimental to the child's psychological development"; and citing then-current literature on research and thought advancing the attachment principle); *Pikula*, 374 N.W.2d at 711 (stating similar history of statutory best-interest factors; citing the same and additional publications).

Professor Bruch's recent article reviews the empirical basis for giving the protection of a child's relationship with the child's primary parent significantly disproportionate importance when addressing custody questions; citing multiple authorities, she notes both that

ans. And the legislature, although it has modified the laws to remove a presumption in favor of the custodian's proposed removal, it has not altered the statutory scheme that prompted the *Auge* court to protect the child's relationship with the sole custodian. The protection *Auge* afforded to a custodial parent is not enjoyed by more limited parental caretakers, even when this caretaker is designated a joint physical custodian. *See Ayers v. Ayers*, 508 N.W.2d 515, 520 (Minn.1993). *Auge* cannot feasibly be employed to permit for the noncustodial parent what statutes grant for the custodial parent.[6]

The sole physical custodian must proceed according to Minn.Stat. § 518.175 (2006) and is not required to satisfy a greater burden under the change-of-custo-

dy statute or *Auge*. Our conclusion is not affected by the fact that the proponent's sole custody was initially conditioned on a removal restriction. We reverse and remand on this determination of law.

**2.**

Our recognition of Minn.Stat. § 518.175 (2006) as the governing statute in this case diminishes the need to examine appellant's contention that the district court erred in analyzing whether there had been a substantial change in circumstances. But a response to appellant's contentions is required insofar as it bears on the best interests analysis to be applied on remand.

*Reasons for Moving*

■ Appellant contends that the district court, when it denied removal, wrongfully

---

"attachment theory" is "broadly accepted in child development[,]" and that "there is a broad consensus that the central importance of the primary relationship has been convincingly demonstrated, while no similar support has been found for the visiting relationship." Bruch, *supra* at 285, 293. In arriving at this conclusion, she reviews a substantial body of statistical evidence indicating that the "more effectively custodial parents can function, the better will be their children's adjustment," and that "the quality of the relationship between the nonresidential parent and child rather than sheer frequency of visitation . . . is most important." *Id.* at 290–91 (quotations omitted); *see id.* at 288–93. She then explains that conflicting views, some of which she acknowledges may be "deceptively appealing," are premised on "wishful thinking" rather than empirical evidence. *Id.* at 285, 293, 297, 306. In systematically critiquing the arguments for not giving significantly disproportionate importance to maintaining a child's relationship with his or her custodial parent, Bruch notes that these arguments are based on "broad generalizations" and "distortion" of the relevant empirical data, the "spin" of "political agenda[s]" focused on something other than a child's best interests, or are designed to be the stuff of "legal journals[,]" where the statistical and empirical data allegedly supporting the argument for diminishing the importance of the stability of

child's relationship with his or her primary parent will not be reviewed as rigorously as would be the case if the same argument and data were presented in a "scientific [journal]." *See id.* at 295–312. Stating that some arguments for diminishing the significantly disproportionate weight to be given a child's relationship with his or her primary parent are simply "disingenuous" and endanger children, Bruch cites literature plainly stating that serving a child's best interests may not be "synonymous with fairness to both parents." *Id.* at 285, 396 n. 62. She ultimately concludes: "Too often the basic, scientifically sound goal of maintaining stability and continuity for children in their primary relationship is forgotten, as attention turns to satisfying the desire of a noncustodial parent to restructure the parent-child relationship." *Id.* at 311; *cf. In re Welfare of J.J.B.*, 390 N.W.2d 274, 280 (Minn.1986) (stating, in context of a termination-of-parental-rights case, that in a conflict between the child's interests and the parent's interests, "parental rights must yield to the best interest of the child").

**6.** We are reviewing a case in which the judgment establishes a sole custodial circumstance for appellant. Nothing determined in this case governs circumstances where a change interferes with a substantial pattern of caretaking by the other parent. *See Lutzi*, 485 N.W.2d at 315.

omitted findings on the reasons for her planned move to New York City. In particular, appellant disputes the court's determination that this evidence does not bear on the best interests of the child.

The district court recognized as changed circumstances the evidence that appellant was engaged to marry and had plans to move to New York, and that the child knew and enjoyed the company of appellant's fiancé and his family. But the court observed that these facts "represent a change in [appellant's] circumstances, but not [I.G.]'s."

And the court declined to address whether appellant's move without the child would be detrimental to the child's best interests, noting that appellant failed to assert that she would move if her son did not. The court evidently assumed that appellant would not move under such circumstances. The court observed only that the child continues to prosper under the circumstances he has experienced since the court's prior order. Thus, the court observed that "[appellant] will have to choose" whether to leave the child in Minnesota or sacrifice instead what she believes is a worthy plan to move to New York, where her husband lives and works. This, the court acknowledged, was "a very unfortunate situation" and one "that impacts or will impact [appellant]" but does not "impact[ ] [I.G.]."

We conclude that the foregoing district court analysis is contrary to the essential character of Minnesota's statutes and case law, which protects the child's best interests by guarding his established relationship with a custodial parent, a matter addressed in the first issue and note 5 of this opinion. For over one hundred years, it has been the "cardinal principle" of Minnesota custody law that the child's best interest is the paramount consideration. *State ex rel. Flint v. Flint*, 63 Minn. 187, 189 n.

2, 65 N.W. 272, 273 (1895) (first observing that the child's best interests rise above the interests of the parent, even where the parent's interest is recognized by statute); *see In re Custody of N.A.K*, 649 N.W.2d 166, 176 (Minn.2002); *Dailey v. Chermak*, 709 N.W.2d 626, 630 (Minn.App.2006), *review denied* (Minn. May 16, 2006).

Arguing that the district court's analysis improperly disregards vital elements of the child's best interests, appellant first addresses her interpretation of Minn.Stat. § 518.18(d) (2004), utilized by the district court, which provides that a court "shall not modify a prior custody order" without a finding that a change has occurred in the circumstances of the child "or the parties." Minn.Stat. § 518.18(d) (2004).

▆ Appellant correctly observes that the change-of-custody statute requires the district court to address facts constituting a change in the circumstances of the parties when such change is relevant to the need for a change in custody to serve the child's best interests. But on remand, appellant's reasons for the proposed move will be advanced under the statutory mandate to determine the child's best interests by considering, among other things, Minn. Stat. § 518.175, subds. 3(b)(6), (7) (2006), which direct the district court to consider the reasons each parent "seek[s] or oppos[es] the relocation" and whether relocation "will enhance the general quality of the life" for the child and his mother. *Id.*

Under *Auge*, the district court's study of the custodian's reasons for relocation was replaced by a presumption that removal should occur. Because this presumption was eliminated by statute, the need for attention to the custodian's reasons for relocation is resurrected, a conclusion put beyond question by the legislature's express inclusion of this topic among those the court must address.

And standards contained in the revised Minn.Stat. § 518.175 coincide with the supreme court's reference to authorities in *Auge*.

The custodial parent, who bears the essential burden and responsibility for the child[ ], is clearly entitled to the same option to seek a better life for herself and the child[ ], particularly where the exercise of that option appears to be truly advantageous to their interests and provided that the parental interest can continue to be accommodated, even if by a different visitation arrangement than theretofore.

*Auge*, 334 N.W.2d at 398 (quoting *D'Onofrio v. D'Onofrio*, 144 N.J.Super. 200, 365 A.2d 27, 30 (1976)). Consistently, the *Auge* court instructs that "the motion requesting an order granting permission to remove the child to another state must include a statement of the reasons for the request and a designation of the geographic location of the proposed residence." *Id.* at 397.[7]

Under the relevant statutes, appellant correctly asserts her right to have the district court determine the worthiness of her proposed move. In the eyes of the legislature, appellant's reasons for moving impact the best interests of the child. *See* Minn.Stat. §§ 518.175, 518.18(d) (2006).

*Separation*

▇▇▇ In addition, when denying a proposed move changes the child's sole custodian, Minn.Stat. § 518.18(d), which does not have the effect of limiting the sole custodian's request to remove the child, may limit this custody change. *Auge*, 334 N.W.2d at 396–97, 399. Characterizing Minn.Stat. § 518.18(d), materially un-

changed between its decision and this case, the *Auge* court noted:

The statute is undoubtedly based in part upon the principle that interruption of the parent-child relationship may be seriously detrimental to the child's psychological development—a principle which should apply with equal or greater force when the child has already been separated from one parent at the time of a dissolution.

*Auge*, 334 N.W.2d at 396 n. 3.

▇▇▇ The custodial parent's need to move prompts the requirement that the district court address added factors if it decides to deny removal of a child. Primary among these requirements is the supreme court's determination that "[i]f denial of the motion will likely result in a modification of custody, the [district] court must consider the negative effects of separating the child and the [primary caretaker]." *Id.* at 399. Because the district court accepted the possibility that appellant, in the face of an order denying her motion to remove the child's residence from Minnesota, may move without the child, it is prudent for the court to consider, in the interests of the child, the impact on the child of what would functionally be a modification of custody. For the reasons discussed below, we direct the court to do so on remand.

*Auge* is frequently invoked for its "removal presumption," a topic now shaped by Minn.Stat. § 518.175, subd. 3(c), which identifies the burden of proof for removal motions. But when the district court denies a proposal to remove that prompts a change in the physical custody of the child,

---

7. We observed earlier the continued impact of *Auge* in its finding that Minnesota's statutory scheme protects the relationship of a child with his or her primary physical custodian. And *see supra* note 5 (reviewing continued prevalence of literature ratifying the *Auge* rationale). These considerations bear again on the portion of *Auge* valuing the moving plans of the custodial parent.

portions of the *Auge* holding remain intact. In addition to requiring consideration of the consequences of separating the child from his custodial parent, the *Auge* holding precludes excessive deference to the child's parenting time away from the custodial parent: "Removal may not be denied under this statute simply because the move may require an adjustment in the existing pattern of visitation.... Though removal should not be allowed for frivolous or spiteful reasons, neither should it be disallowed solely to maintain the existing visitation patterns." *Auge*, 334 N.W.2d at 397–98. The *Auge* court then supported this observation with the much-cited New Jersey removal standards stated in *D'Onofrio:*

> The court should not insist that the advantages of the move be sacrificed and the opportunity for a better and more comfortable lifestyle for the mother and children be forfeited solely to maintain weekly visitation by the father where reasonable alternative visitation is available and where the advantages of the move are substantial.

*Auge*, 334 N.W.2d at 398 (quoting *D'Onofrio*, 365 A.2d at 30).[8]

In these respects, the *Auge* rationale and its statutory roots remain undisturbed. The supreme court in *Auge* declared that denial is improper without an evidentiary hearing that fully addresses the child's best interests. *Id.* at 399; *cf. Silbaugh v. Silbaugh*, 543 N.W.2d 639, 642 (Minn.1996) (permitting disposition without evidentiary hearing in event proponent fails to make a prima facie showing for relocation).

Before remand, without an evidentiary hearing record, we have no occasion to specify more particularly how Minn.Stat. § 518.18(d) is implicated by the prospect of a change in the child's primary caretaking arrangement. This court will not exercise the supreme court's prerogative to prescribe a standard to guide the district court on this question before the district court has considered the issue. *See State v. Gilmartin*, 535 N.W.2d 650, 653 (Minn. App.1995) ("As an intermediate appellate court, we decline to exercise supervisory powers reserved to this state's supreme court."), *review denied* (Minn. Sept. 20, 1995).

In *Auge*, the supreme court found that "denial of appellant's request for removal was in fact a modification of custody...." 334 N.W.2d at 396. This analysis took place within the context of the custodian's proposed removal of the child to Hawaii, because the custodian's husband planned to be away during much of the year "to oversee ... business interests...." *Id.* at 395. These circumstances were more telling because the *Auge* appellant and her husband had two children from their marriage, in addition to the Auge child. *Id.* The supreme court reversed a district court order that found that there was no "deep business necessity" for the yearly travel and that removal was not in the child's best interests because it would disrupt his school year. *Id.* As previously stated, the *Auge* court relied on authority finding the removal option of the physical custodian particularly apt "where the exercise of that option appears to be truly advantageous to the[ ] interests" of this parent and the child. *Id.* at 398 (quoting *D'Onofrio*, 365 A.2d at 30).

Finally, respondent asserts that the district court's 2001 memorandum decision already contained a footnoted finding that it would be in I.G.'s best interests to be with his father if his mother moves. In its 2006 order, the district court reflected on

---

**8.** This again constitutes an aspect of *Auge,* together with the rationale underlying it that has continued vitality. *See supra* notes 5 and 7.

its prior statement that "a major change in [the child's] daily routine would not be consistent with his best interests *as long as* mother remains available to parent him in Minnesota...." But the district court's 2001 statement was premised on the circumstances existing at the time of the decision; it did not, nor could it, anticipate future changes in the circumstances of the parties and the child, and the court also could not foresee the impact of any such changes on the child's best interests.

The 2001 court statement was also conclusory, made without a finding that it would be best for the child to be separated from his mother. Moreover, the 2001 footnote merely observed that it "would award sole physical custody to [respondent]" if its locale restriction were "found wanting" and affirmed the court's resolve to protect the child's Minnesota relationships and environment. On remand, the district court is instructed to consider the standards of Minn.Stat. § 518.175, subd. 3, and to determine, in light of the evidence at a hearing, the effects of current circumstances as they bear on the denial standards stated in this opinion.

*Conclusion: Interplay of Reasons for Removal and Change–of–Custody Evidence*

In sum, there is merit in appellant's plea that the district court erroneously declined to address the worthiness of her plan for removal of the child to New York City. An adequate reason for the proponent's plan substantially alters the case from the perspective of the child's best interests, limiting the circumstances in which removal can be denied. We are directed to no precedent, in Minnesota or elsewhere, for denial of removal without findings either denying the need for the move or determining instead that the physical custodian can move without the child without detriment to the child's best interests.

Appellant also argues that an order without these findings implicates her constitutional rights. But these rights must give way to a compelling state interest in the form of the best interests of the child, judicially determined, but are not set aside in favor of a reconciliation of parental interests without a full determination of the child's interests. *See LaChapelle,* 607 N.W.2d at 164 ("Minnesota's interest in protecting [the child's] best interests is compelling and justifies intrusion into [appellant's] privacy in her familial relationship with [the child.]"). Recognizing the difference between this case and *LaChapelle* (below), and because the rationale stated in this opinion makes it unnecessary, we decline to decide the merits of appellant's constitutional argument.

We are mindful that *LaChapelle* affirmed a judgment condition against removal, *id.* at 168, but we observe the absence of evidence or argument in that case suggesting that the moving proponent had compelling reasons for a move. Rather, the facts in *LaChapelle* indicated no more than the mother's "employment reasons" for her desired move and her "desire to live in rural Michigan." *Id.* at 157, 165. A change of custody was not implicated in the removal denial reviewed in *LaChapelle,* which must be examined on its facts. *See Dailey v. Chermak,* 709 N.W.2d 626, 630 (Minn.App.2006) (treating *LaChapelle* on its "unique facts"), *review denied* (Minn. May 6, 2006).

*Child's Interest in Removal*

■ Appellant also asserts that the district court, when assessing changes in I.G.'s circumstances, wrongfully minimized the prima facie evidence of the child's preference to relocate to New York City and the advantages of the proposed move for I.G. The district court addressed both the child's preference and the advantages appellant asserted for the child. The court

noted assertions that "[I.G.] is committed to living as an Orthodox Jew," "[I.G.] has frequently expressed a passion for New York City," and I.G. "wants . . . an environment that offers more opportunities for him to meet his academic potential." Still, the court found that appellant's evidence was wanting because it did not suggest I.G. wanted to move a thousand miles from his father, and because there was no showing that the child was presented with the alternatives of remaining in Minnesota or moving. Although the district court recognized that there are no opportunities for the child to attend Orthodox high school in Minnesota, it observed that the child would not reach high school for four years.

On the record, the district court noted there was no indication that I.G. made his preference known: "[Appellant is] the one who is telling me, I reread the affidavit, that this is the life that [I.G.] wants. He wants New York. He wants the school and all that. The only person I've got telling me that is [appellant] as far as the want goes."

After it examined evidence that the child feels more out of place in Minneapolis than he would in New York City, the district court further explained that the boy's religion was not a given circumstance, but a topic of appellant's choice:

> The fact that [I.G.] may feel different and stigmatized is not a product of the current custodial environment. Rather, if [I.G.] is truly stigmatized by his appearance, it necessarily reflects a judgment call by [appellant] that the benefits of meeting Orthodox appearance demands outweigh the attendant stigma. If there is any harm here, it is not causally related to the physical custody environment. Instead, it is the product of a decision that is more legal than physical in nature.

In support of her case for removal, appellant explained in her initial affidavit, among other things:

> [I.G.] has been enveloped in the Orthodox way of life and that way of life is taught in his Orthodox Jewish school, Torah Academy, which he has attended since he was 4 years old.
>
> Over the years, as [I.G.] has matured and has learned more about the Jewish laws, the Torah, and practices of his faith along the Orthodox tradition, it has become a way of life for him. He accepts Orthodoxy as his path and embraces it wholeheartedly.
>
> . . . .
>
> [I.G.] has frequently expressed a passion for New York City, as it is the cultural center for Orthodox Judaism in the United States, if not the world. . . . As just one example of the differences between Minneapolis and New York, in New York City, [I.G.] will have the choice of fifteen different Orthodox schools to attend. In Minnesota, there is only Torah Academy, which only goes through the eighth grade. Upon graduation from eighth grade, most boys leave Minnesota to further their education in larger cities that offer advanced Jewish studies. . . . Many leave before they finish the eighth grade. . . . There are only [seven] boys remaining in [I.G.]'s class, and most of those that remain are not at [I.G.]'s academic level.

There is merit in appellant's suggestion that her affidavits establish prima facie proof on questions of the child's preference and interests in a move. The child was five and one-half years old when the district court examined his circumstances in 2001. He has spent the intervening time in the sole physical custody of appellant. Although the district court never established the legal custody of the child, it is undisputed that appellant, the physical

custodian, was permitted by the court to shape the child's religious life. The child's religion is now a prominent consideration in shaping his best interests. *See* Minn. Stat. § 518.17, subd. 1(a)(10) (2004) (providing that religious considerations are part of a best interests analysis); *Johnson v. Johnson*, 424 N.W.2d 85, 88–89 (Minn. App.1988) (finding that the district court erred by failing to consider the parties' ability to raise the children in the Catholic faith).

Relating to the child's desire to move from Minnesota, I.G. has likely reached an age at which he has the ability to appreciate the distance between Minnesota and New York City. Appellant's affidavits state a prima facie case of his preference to move. She is entitled to a determination of the child's best interests at a hearing in which the court must examine the needs and the preferences of the child as well as the impact of the proposed change, including enhancements to I.G.'s general quality of life. Minn.Stat. § 518.175, subd. 3.

*Other Factors*

Appellant addresses a number of additional factors to support her argument that the district court erred in denying an evidentiary hearing. Our review of these factors, as they relate to the district court's application of Minn.Stat. § 518.18(d), is not necessary or valuable for purposes of remand proceedings, which are to be conducted according to the standards of Minn.Stat. § 518.175.

**3.**

■ Finally, appellant asserts that the district court demonstrated bias against her by selectively relying on facts favoring respondent while disfavoring her and by wrongfully minimizing her religious considerations. Appellant seeks removal of the district court judge and requests a remand "to Ramsey [County] or any other adjoining county."

All motions for removal of a judge, referee, or judicial officer, on the basis of actual prejudice or bias shall be heard in the first instance by the judge sought to be removed. If that judge denies the motion, it may subsequently be heard and reconsidered by the Chief Judge of the district or another judge designated by the Chief Judge.

Minn. R. Gen. Pract. 106. Because appellant has not brought a motion for removal to the judge she seeks to remove, we decline to address the merits of this argument. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988).

## DECISION

Minn.Stat. § 518.175, subd. 3 (2006), governs a custodial parent's request to remove a child from the state, even if the case involves a removal restriction. Because the district court erred by applying Minn.Stat. § 518.18(d) (2004), we reverse and remand for the court's consideration of the child's best interests, consistent with the appropriate standards as addressed in this opinion.

**Reversed and remanded.**