In re the MARRIAGE OF Deborah A. GOLDMAN, f/k/a Deborah A. Greenwood, Respondent,

v.

Mark E. Greenwood, Appellant.

No. A06–1110.

Supreme Court of Minnesota.

March 27, 2008.

Rehearing Denied May 14, 2008.

Suzanne Marie Edminston, Michael D. Dittberner, Clugg, Linder, Dittberner & Edminston, Ltd., Edina, for appellant.

Richard D. Goff, Minneapolis, Felipe Orner, Flushing, NY, for respondent.

Heard, considered, and decided by the court en banc.

## OPINION

ANDERSON, G. BARRY, Justice.

Appellant Mark Greenwood challenges the decision of the court of appeals reversing the district court's denial of respondent Deborah Goldman's motion to remove the parties' minor child out of state. Appellant argues that the court of appeals erred in ruling that Minn.Stat. § 518.175, subd. 3 (2006), rather than Minn.Stat. § 518.18(d)

---

1. The district court reserved the issue of legal custody in its September 2001 memorandum decision.

2. The district court's reference to "the LaChapelle locale restriction" is derived from the

(2006), governs respondent's motion for removal and in ruling that respondent is entitled to an evidentiary hearing. We agree, and we reverse the decision of the court of appeals and reinstate the district court's order.

Appellant and respondent were married on January 16, 1993; together they have one son, I.G., born on January 30, 1996. While the parties' dissolution proceedings were pending, respondent received a job offer from an employer in Boston and moved the district court to permit her to move out of state with I.G. In October 2000, the district court denied respondent's motion for permission to remove I.G. out of state but awarded her temporary sole legal and physical custody of I.G. In a September 2001 memorandum decision, the district court denied another request by respondent to remove I.G. from the state. The parties agree that the district court awarded respondent sole physical custody contingent on her remaining in Minnesota.[1] The district court indicated that imposition of the locale restriction was in I.G.'s best interests, and it suggested that it would award custody to appellant in the absence of the restriction:

If for any reason the *LaChapelle* locale restriction is found wanting, this [c]ourt would award sole physical custody to father. It would award sole physical custody to father to ensure that [I.G.] continues to prosper from his intimate relationships with father [and father's other children], does not have to suffer yet another major change in his young life, and could continue with his existing school and religious arrangements.[2]

decision of the court of appeals in *LaChapelle v. Mitten,* 607 N.W.2d 151 (Minn.App.2000) (upholding an award of physical custody conditioned on the custodian residing in the state), *rev. denied* (Minn. May 16, 2000).

The parties entered an oral stipulation to a negotiated settlement in June 2002, incorporating the locale restriction. On July 11, 2002, the district court dissolved the parties' marriage and granted respondent sole physical custody of I.G. subject to reasonable parenting time by appellant. The court stated that neither party could remove I.G. from the state for the purpose of changing his residence without the written consent of the other party or a court order. Additionally, the court clarified that it had addressed respondent's request to remove I.G. from the state in its September 2001 memorandum decision, which it "incorporated by reference as if fully set forth herein."

In February 2006, shortly after I.G.'s tenth birthday, respondent moved the district court to eliminate the locale restriction from the custody order and to permit her to move with I.G. to New York City, the home of respondent's fiancé. In the alternative, she moved the court to order a "relocation evaluation" and hold an evidentiary hearing. Respondent submitted 15 affidavits in support of her motion. In her own affidavit, she alleged that changes in circumstances rendered the locale restriction "contrary to [I.G.'s] best interests" and a danger to I.G.'s "emotional, spiritual, and academic development." She particularly emphasized the superior opportunities in New York City for I.G. to grow in his Orthodox Jewish faith, noting that there are no Orthodox Jewish schools in Minnesota that offer education beyond the eighth grade and that New York City has a thriving Orthodox Jewish community. The other affidavits attest to respondent's love for I.G., her good character, and the academic and spiritual benefits I.G. would experience as a result of relocating to New York City. Appellant opposed respondent's motion, expressing his concern that the move would harm his relationship with I.G. and arguing that respondent failed to make a prima facie case for modification of the "conditional custody award."

The district court denied respondent's motion to eliminate the locale restriction from the custody order, for permission to remove I.G. to New York, and to order a relocation evaluation and hold an evidentiary hearing. The court applied section 518.18(d), which governs modification of custody orders, not section 518.175, subd. 3, which governs a custodial parent's relocation of a child to another state, to respondent's motion, reasoning that a locale restriction "is an integral part of the prior 'custody order'." In applying section 518.18(d), the court concluded that respondent failed to make a prima facie case of changed circumstances, of endangerment, and that the benefits of the move outweighed its detriments.

Respondent appealed the district court's ruling. The court of appeals held that the district court erred in applying section 518.18(d) and reversed and remanded for an evidentiary hearing to consider I.G.'s best interests under section 518.175, subd. 3. *In re Marriage of Goldman*, 725 N.W.2d 747, 753, 761 (Minn.App.2007). Both parties filed petitions for review, and we granted review of appellant's petition in full and of respondent's petition in part.[3]

## I.

As a threshold issue, we consider whether the locale restriction in the district court's custody order is valid. "Appellate review of custody determinations is limited to whether the district court

---

**3.** Appellant filed a motion to supplement the record on appeal, which we previously deferred. Appellant's motion is granted.

abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *In re Custody of N.A.K.,* 649 N.W.2d 166, 174 (Minn.2002). District courts have "broad discretion in determining custody matters," *Durkin v. Hinich,* 442 N.W.2d 148, 151 (Minn.1989), and we agree with the recognition of the court of appeals in *Dailey v. Chermak* "that there is no absolute prohibition under Minnesota law against awarding child custody on the condition of maintaining a specific geographic residence for the child, as long as that residence is shown clearly and genuinely to serve the child's best interests," 709 N.W.2d 626, 630 (Minn.App. 2006), *rev. denied* (Minn. May 16, 2006).

Respondent, who stipulated to the incorporation of the locale restriction into the district court's order, argues that the restriction is nevertheless void because it provides for an automatic transfer of custody in the event that she moves out of state. The district court explained that "[i]f for any reason the *LaChapelle* locale restriction is found wanting, this [c]ourt would award sole physical custody to father." The district court's use of the language "found wanting" implies that a hearing would precede any subsequent custody transfer. Furthermore, in its denial of respondent's motion for removal in 2006, the district court suggested that its analysis might change once I.G. completes eighth grade and is no longer able to attend Orthodox Jewish school in Minneapolis. We do not interpret the district court's locale restriction as foreclosing future reassessment of I.G.'s best interests.[4]

We leave for another day the determination of the validity of a locale restriction

that does provide for the automatic transfer of custody upon the sole physical custodian's relocation. Because the district court acted within the scope of its discretion, the locale restriction in respondent's custody order is valid.

## II.

■ Having determined that the locale restriction in this case is valid, we next consider whether section 518.18(d) or section 518.175, subd. 3, governs respondent's motion for removal. The district court applied section 518.18(d), but the court of appeals reversed, holding that section 518.175, subd. 3, is the governing statute. Determination of the applicable statutory standard, *Ayers v. Ayers,* 508 N.W.2d 515, 518 (Minn.1993), and the interpretation of statutes, *In re Estate of Palmen,* 588 N.W.2d 493, 495 (Minn.1999), are questions of law that we review de novo.

The modification of custody orders is governed by Minn.Stat. § 518.18(d), which states in pertinent part as follows:

[T]he court shall not modify a prior custody order or a parenting plan provision which specifies the child's primary residence unless it finds * * * that a change has occurred in the circumstances of the child or the parties and that the modification is necessary to serve the best interests of the child. In applying these standards the court shall retain the custody arrangement or the parenting plan provision specifying the child's primary residence that was established by the prior order unless:

* * * *

---

4. The district court did state in 2006 that the locale restriction "was stronger than just *LaChapelle.*" But the court clarified that statement by asking, "Instead of just saying * * * she gets custody if she stays here, didn't I say that if I didn't put the * * * restriction on,

that he would have got custody?" Thus, the district court regarded its conditional language as merely reflecting what the court would have done had it not imposed the locale restriction.

(iv) the child's present environment endangers the child's physical or emotional health or impairs the child's emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

Minnesota Statutes § 518.175, subd. 3, governs a custodial parent's relocation of a child to another state, providing as follows:

(a) The parent with whom the child resides shall not move the residence of the child to another state except upon order of the court or with the consent of the other parent, if the other parent has been given parenting time by the decree. * * * *

(b) The court shall apply a best interests standard when considering the request of the parent with whom the child resides to move the child's residence to another state. * * * *

(c) The burden of proof is upon the parent requesting to move the residence of the child to another state * * *.

According to the court of appeals, the scope of section 518.18(d) "is confined to the change of provisions 'specifying the child's primary residence.'" *Goldman*, 725 N.W.2d at 753. But a careful reading of section 518.18(d) indicates that a motion for removal filed by a sole physical custodian subject to a locale restriction falls within the ambit of the statute. Section 518.18(d) refers to (1) modifications to "*a prior custody order* or a parenting plan provision which specifies the child's primary residence," (2) retaining "*the custody arrangement* or the parenting plan provision specifying the child's primary residence," and (3) "*a change in the custody arrangement* or primary residence."

Minn.Stat. § 518.18(d) (emphasis added). Because we normally interpret the conjunction "or" as disjunctive rather than conjunctive, *Amaral v. St. Cloud Hosp.*, 598 N.W.2d 379, 385 (Minn.1999), the phrases "custody order" and "custody arrangement" stand alone and should not be confused with the statute's references to a child's "residence."

It should also be noted that Minn.Stat. § 518.18(d)(i) addresses situations where "the court finds that a change in the custody arrangement or primary residence is in the best interests of the child." The interpretation of the court of appeals, which limits the applicability of section 518.18(d) to the change of provisions specifying a child's primary residence, renders the phrase "custody arrangement" superfluous, violating the rule of statutory construction that "the legislature intends the entire statute to be effective and certain," Minn.Stat. § 645.17(2) (2006).

Finally, the defining feature of a locale restriction is that it is included in the custody order and thus cannot be eliminated unless a party meets the heightened standard for custody order modification under section 518.18(d). By evaluating respondent's motion for removal under section 518.175, subd. 3 (the standard that governs a custodial parent's relocation of a child to another state in the absence of a locale restriction), the court of appeals implicitly invalidated the restriction. Such an effect is at odds with our recognition of the validity of locale restrictions.[5] Section 518.18(d), not section 518.175, subd. 3, governs a motion for removal brought by a sole physical custodian subject to a locale

---

**5.** We note that our ruling in *Auge v. Auge*, 334 N.W.2d 393 (Minn.1983), has no remaining vitality because it has been superseded in its entirety by statute. Act of May 31, 2006, ch. 280, § 13, 2006 Minn. Laws 1103, 1110–11 (codified at Minn.Stat. § 518.175, subd. 3(b), (c)).

restriction. We therefore reverse the decision of the court of appeals.

## III.

■ Respondent contends that the district court erred in denying her an evidentiary hearing on her motion for removal. The district court declined to grant respondent an evidentiary hearing because it found that she failed to make a prima facie case under section 518.18(d) of changed circumstances, of endangerment, and that the benefits of the move outweighed its detriments.[6] The court of appeals did not address whether respondent made a prima facie case under section 518.18(d), as it concluded that section 518.175, subd. 3, governs her motion for removal. Our resolution of this issue determines whether we remand the case for an evidentiary hearing or simply reverse the court of appeals and reinstate the district court order.

A district court is required under section 518.18(d) to conduct an evidentiary hearing only if the party seeking to modify a custody order makes a prima facie case for modification. *See Silbaugh v. Silbaugh,* 543 N.W.2d 639, 642 (Minn.1996); *Morey v. Peppin,* 375 N.W.2d 19, 25 (Minn.1985); *Nice–Petersen v. Nice–Petersen,* 310 N.W.2d 471, 472 (Minn.1981). To be entitled to a hearing, respondent must establish the following four elements of a prima facie case under section 518.18(d): (1) a change in her own circumstances or those of I.G. or appellant, (2) that modification is necessary to serve I.G.'s best interests, (3) that I.G.'s present environment endangers his physical health, emotional health, or emotional development, and (4) that the benefits of the move outweigh the detriments with respect to I.G. *See Frauen-*

shuh v. Giese, 599 N.W.2d 153, 157 (Minn. 1999), *superseded in part on other grounds by* Act of Apr. 27, 2000, ch. 444, art. 1, § 5, 2000 Minn. Laws 980, 984–85 (codified at Minn.Stat. 518.18(d)(i)), *as recognized in In re Comm'r of Pub. Safety,* 735 N.W.2d 706, 711 (Minn.2007); *Szarzynski v. Szarzynski,* 732 N.W.2d 285, 291–92 (Minn.App.2007).

■ Appellate review of custody modification and removal cases is limited to considering " 'whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law.' " *Silbaugh,* 543 N.W.2d at 641 (quoting *Pikula v. Pikula,* 374 N.W.2d 705, 710 (Minn.1985)). Appellate court's set aside a district court's findings of fact only if clearly erroneous, giving deference to the district court's opportunity to evaluate witness credibility. Minn. R. Civ. P. 52.01; *Sefkow v. Sefkow,* 427 N.W.2d 203, 210 (Minn.1988). Findings of fact are clearly erroneous where an appellate court "is left with the definite and firm conviction that a mistake has been made." *Peterson v. Peterson,* 308 Minn. 297, 306 n. 4, 242 N.W.2d 88, 94 n. 4 (1976).

■ *Changed Circumstances.* When a party seeks modification of a custody order, "the burden is upon the movant to establish satisfactorily on a preliminary basis that there has occurred a significant change of circumstances from the time when the original or amended custody order was issued." *Nice–Petersen,* 310 N.W.2d at 472. The district court found that respondent "has not presented a prima facie case that the requisite change of circumstances has occurred," dismissing respondent's engagement as "a change in [her] circumstances, but not [I.G.]'s." Ac-

---

6. The district court did not analyze whether modification of the custody order was necessary to serve I.G.'s best interests because it found that respondent failed to make a prima facie case of the other elements of section 518.18(d).

cording to the district court, "the question here is whether there has been a substantial change in circumstances that impacts [I.G.], not whether there has been a change that impacts or will impact [respondent]."

Because section 518.18(d) provides that the changed circumstances can relate to "the child or the parties," the district court erred in not giving more weight to respondent's engagement in the change-of-circumstances analysis. But the district court's error does not require reversal of its denial of respondent's motion, because the district court correctly concluded that respondent failed to make a prima facie case of other elements of section 518.18(d). *See* Minn. R. Civ. P. 61 (requiring courts to disregard harmless error).

*Endangerment.* "The concept of 'endangerment' is unusually imprecise," but a party must demonstrate "a significant degree of danger" to satisfy the endangerment element of section 518.18(d)(iv).[7] *Ross v. Ross,* 477 N.W.2d 753, 756 (Minn. App.1991); *see also Johnson–Smolak v. Fink,* 703 N.W.2d 588, 591 (Minn.App. 2005). The district court found that I.G.'s current custodial environment does not endanger his physical or emotional health or impair his emotional development, noting that instead of presenting a prima facie case of endangerment, respondent merely emphasized "the opportunities that will be available to [I.G.] if she is allowed to move him to New York." In fact, respondent admitted that I.G. has a good relationship with appellant and that I.G. has adjusted well to the many changes in his life. The district court did not abuse its discretion in concluding that respondent failed to make

a prima facie case of endangerment under section 518.18(d)(iv).

The dissent concludes that respondent made a prima facie case of endangerment, reasoning that I.G. may be endangered by "geographical separation" from respondent. But the endangerment element of section § 518.18(d)(iv) is concerned with whether "the child's *present environment* endangers the child's physical or emotional health or impairs the child's emotional development," Minn.Stat. § 518.18(d)(iv) (emphasis added), not whether the child may be endangered by future events. The policy-based argument advanced by the dissent regarding when to measure the endangerment to the child is not without merit, but such a determination belongs to the legislature, not to this court. The effect of the dissent's proposed outcome here, carried to its logical conclusion, is that a prima facie case of endangerment is made anytime a custodial parent seeks to move out of state in the face of a locale restriction, because any such move would result in "geographical separation" from the child. This approach would gut locale restrictions of much of their effect because, as we noted earlier, the defining feature of a locale restriction is that it is included in the custody order and thus cannot be eliminated unless a party meets the section 518.18(d) standard for custody order modification.

*Benefits and Detriments.* The district court also found that respondent failed to make a prima facie case that the benefits of the move outweighed its detriments with respect to I.G. The court stated that although the benefits of the move were described in a number of affidavits, "[n]o witness has proffered a competent opinion

---

**7.** Likewise, the Uniform Marriage and Divorce Act permits modification of a child's custodian where "the child's present environment *endangers seriously* his physical, mental,

moral, or emotional health." Unif. Marriage & Divorce Act § 409(b)(3), 9A U.L.A. 439 (1998) (emphasis added).

that the advantages of moving to New York City outweigh the harm associated with the move." The dissent does not support its conclusion that respondent made a prima facie case of this element, but simply notes that "the benefits and detriments of the move have not been weighed." We reiterate that it is the party seeking modification of a custody order who bears the burden of making a prima facie case of the section 518.18(d) elements. The district court did not abuse its discretion in concluding that respondent failed to make a prima facie case that the benefits of the move outweighed its detriments with respect to I.G.

We hold that because respondent failed to make a prima facie case under section 518.18(d), the district court did not abuse its discretion in denying respondent's motion for an evidentiary hearing. We therefore reverse the decision of the court of appeals and reinstate the district court's order denying respondent's motion to remove I.G. from the state without an evidentiary hearing.

Reversed and district court order reinstated.

DIETZEN, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

ANDERSON, PAUL H., Justice (dissenting).

I respectfully dissent. While I agree that Minn.Stat. § 518.18(d) (2006) is the applicable statute, unlike the majority, I conclude that respondent Deborah Goldman's motion for an evidentiary hearing on custody should have been granted under the statute. Therefore, I would affirm the court of appeals decision to reverse the district court and remand this case to the district court for an evidentiary hearing.

Appellant Mark Greenwood (father) and respondent Deborah Goldman f/k/a Deborah Greenwood (mother) were married on January 16, 1993. I.G., the one child of this marriage, was born on January 30, 1996. On December 6, 1999, mother filed for dissolution of the marriage and moved for sole legal and physical custody of I.G. In 2001, the court temporarily awarded mother sole physical custody of then 5 year old I.G. but denied her request to move to Boston with I.G. to be closer to her family and to seek better employment. More specifically, the court imposed a *"LaChapelle* locale restriction," which granted mother sole physical custody "as long as mother remains available to parent [I.G.] in Minnesota." At the time, the court reserved the issue of legal custody for a decision at a later date. In July 2002, the court entered its decree dissolving the marriage. In the decree, the court granted mother sole physical custody subject to the locale restriction on removal from the state that the court included in its 2001 order.

In February 2006, shortly after I.G.'s tenth birthday, mother brought a motion in district court to eliminate the *LaChapelle* locale restriction and for permission to remove I.G. to New York City. She also moved that the district court both undertake a relocation evaluation and hold an evidentiary hearing if it decided not to grant her motion immediately.

Mother submitted 15 affidavits in support of her motion. In her own affidavit, she disclosed that she was engaged to be married to a man living in New York City and alleged that changes in circumstances rendered the court's locale restriction "contrary to I.G.'s best interests" and a danger to "[I.G.]'s emotional, spiritual, and academic development." She noted that all of father's other children were now out of the home or would soon be leaving the

home, that I.G. had adjusted well to the changes in his life, and that members of her extended family lived on the East Coast. Mother emphasized the superior opportunities in New York City for I.G. to grow in his Orthodox Jewish faith, stating that there are no Orthodox Jewish schools in Minnesota that offer education beyond the eighth grade and that New York City has a thriving Orthodox Jewish community. The other 14 affidavits were by persons who attested to mother's love for I.G., her good character, and that the move to New York City would benefit I.G. academically and spiritually.

At the March 2006 hearing on mother's motion for removal, the district court stated that because it had actually said that it would award custody to father were it not for the relocation restriction, "I think [the locale restriction] was stronger than just *LaChapelle.*" The court subsequently denied mother's motion, rejecting her request to eliminate the restriction and to permit the removal of I.G. The court also refused to order a "relocation evaluation" followed by an evidentiary hearing. The court determined that the custody modification standard of section 518.18(d), not the removal standard of Minn.Stat. § 518.175, subd. 3, (2006), governed mother's motion "because a locale condition is an integral part of the prior 'custody order.'" The court concluded that because the initial grant of sole physical custody was explicitly subject to mother remaining in Minnesota, her motion was in effect a motion to modify custody and therefore was governed by section 518.18.

The district court proceeded to distinguish this case from that presented in *Auge v. Auge,* 334 N.W.2d 393 (Minn. 1983). In *Auge* we said that a custodial parent is presumptively entitled to remove a child from the state and the burden of proof is on the party opposing such a move (hence the term "*Auge*" presumption). *Id.* at 397. But the district court stated that this case is different because the initial custody award in *Auge* was not restricted by locale. In addition, the court relied on the reasoning of the court of appeals in *Swarthout v. Siroki,* No. C9–00–2219, 2001 WL 766870 (Minn.App. July 10, 2001), in which the award of sole physical custody to the mother was similarly conditioned on her remaining in Minnesota, which in turn led the court of appeals in *Swarthout* to construe the mother's motion to remove the child from the state as a request for modification of custody.

Under section 518.18(d), a district court is not to modify a custody order unless it finds "that a change has occurred in the circumstances of the child or the parties and that the modification is necessary to serve the best interests of the child." Even if the petitioner makes out a prima facie case of changed circumstances, the court is to retain the existing custody arrangement unless, among other possibilities, "the child's present environment endangers the child's physical or emotional health or impairs the child's emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child."

The district court compared I.G.'s circumstances, as outlined in its 2001 memorandum decision denying mother's first request to remove the child, and concluded that although mother's circumstances had changed, the child's circumstances had not. The court further concluded that mother had not shown that the child's present environment endangered his physical or emotional health or impaired his emotional development. Nor, the court concluded, had mother shown that the advantages of moving I.G. to New York City outweighed the harm likely to be caused by the move.

The court emphasized that there was no evidence that I.G. wanted to move or that he could not "continue living and learning as an Orthodox Jew in Minneapolis." The court deemed premature mother's argument that I.G.'s Orthodox Jewish schooling in Minneapolis would end after eighth grade, noting that I.G. could continue to attend his current school "for the next few years." Because the court concluded mother had not made out a prima facie case, it denied the motion without considering the other factors under section 518.18, citing *Sjodin v. Sjodin*, A05–1445, 2006 WL 44351, at *2 (Minn.App. Jan.10, 2006). In *Nice–Petersen* we held that a district court did not abuse its discretion when it denied a motion for modification of custody without an evidentiary hearing when the moving party failed to make out a prima facie case of changed circumstances that endangered the child's physical or emotional health or the child's development. *Nice–Petersen*, 310 N.W.2d at 472.

Shortly before mother appealed, the legislature amended section 518.175, subd. 3, by instructing district courts to apply a "best interests standard" to a request for an out-of-state move, by listing the factors a court is to consider in applying the "best interests standard," and by placing the burden of proof on the parent requesting to move the residence of the child to another state. Act of May 31, 2006, ch. 280, § 13, 2006 Minn. Laws 1103, 1110–11 (codified at Minn.Stat. § 518.175, subd. 3(b), (c) (Supp.2008)). Placing the burden of proof on the parent seeking to remove the child from the state directly conflicts with our decision in *Auge*, where we put the burden on the party opposing the out-of-state move. 334 N.W.2d at 397.

Like the district court, the first issue addressed by the court of appeals was whether to apply section 518.18 or section 518.175. The court of appeals applied section 518.175, concluding that the reach of section 518.18 is limited to "a change in placement, a change in physical custody from one household to another" and to "the change of provisions 'specifying the child's primary residence.'" *In re Marriage of Goldman*, 725 N.W.2d 747, 753 (Minn.App.2007) (citing Minn.Stat. § 518.18(d)). Not only did the court apply section 518.175, it applied section 518.175 as amended in 2006. The court did so on the grounds that appellate courts generally apply the law "'as it exists at the time they rule on a case.'" *Goldman*, 725 N.W.2d at 751 (quoting *Interstate Power Co. v. Nobles Co. Bd.*, 617 N.W.2d 566, 575–76 (Minn.2000)).

The court of appeals then explained the relationship between the 2006 revisions to section 518.175 and *Auge*. Although the legislature has removed the *Auge* presumption in favor of the custodial parent, the court concluded that "when the district court denies a proposal to remove that prompts a change in the physical custody of the child, portions of the *Auge* holding remain intact," *Id.* at 757–58. In particular, the court said "'[i]f denial of the motion will likely result in a modification of custody, the [district] court must consider the negative effects of separating the child and the [primary caretaker].'" *Id.* at 757 (quoting *Auge*, 334 N.W.2d at 399). As a result, the court of appeals concluded that, the statutory revisions notwithstanding, *Auge* nevertheless continues to require an evidentiary hearing that fully addresses the child's best interests before the district court can deny a motion by the custodial parent to remove the child from the state. *Id.* at 758.

The court of appeals thus reversed the district court's denial of mother's motions and remanded the matter to the district court with instructions to hold an eviden-

tiary hearing. At that hearing, as the court of appeals envisioned it, "[mother's] reasons for the proposed move will be advanced under the statutory mandate to determine the child's best interests." *Id.* at 756. In addition, the court of appeals directed the district court to consider, under the auspices of section 518.18, "in the interests of the child, the impact on the child of what would functionally be a modification of custody." *Id.* at 757. Finally, the court appeared to question the validity of any *LaChapelle* restrictions when it said: "We find no basis for departing from the foregoing statutory scheme to permit court-imposed limits on removal that put that relief beyond the reach of sole physical custodians in circumstances such as [mother's]." *Id.* at 753.

I agree with the majority that the district court acted within the scope of its discretion when it included the locale restriction in its custody order. Therefore, to the extent the court of appeals either explicitly or implicitly invalidated *LaChapelle* restrictions, that part of its opinion is rejected. I also agree that Minn.Stat. § 518.18(d), not Minn.Stat. § 518.175, subd. 3, governs mother's motion to remove I.G. to New York City. But I disagree with the majority's conclusion that mother failed to establish a prima facie case for modification that would entitle her to have an evidentiary hearing. Accordingly, I conclude that the district court abused its discretion when it denied mother an evidentiary hearing, and I would reverse and remand for an evidentiary hearing.

To be entitled to an evidentiary hearing, mother must make a prima facie showing of the four elements listed in section 518.18(d). These four elements as properly listed by the majority are: (1) a change in her own circumstances or those of I.G. or father; (2) modification is necessary to serve I.G.'s best interests; (3) I.G.'s present environment endangers his physical health, emotional health or emotional development; and (4) benefits of the move outweigh the detriments with respect to I.G. *See Frauenshuh v. Giese*, 599 N.W.2d 153, 157 (Minn.1999), *superseded in part on other grounds* by Act of Apr. 27, 2000, ch. 444, art. 1, § 5, 2000 Minn. Laws 980–84 (codified at Minn.Stat. § 518.18(d)(i) (2006)), *as recognized in In re Comm'r of Pub. Safety*, 735 N.W.2d 706, 711 (Minn. 2007); *Szarzynski v. Szarzynski*, 732 N.W.2d 285, 291–92 (Minn.App.2007).

The majority correctly notes that the district court erred with respect to the first element—changed circumstances. Mother is engaged to a man who lives in New York and indicated that she had plans to marry him and live with him in New York. She also indicated that I.G. enjoys the company of mother's fiancé and his family. Mother has sole physical custody of I.G. If she marries and decides to move to New York the existing court order mandates that sole physical custody of I.G. will be transferred from her to father. It is difficult to understand why the district court concluded that evidence of such a dramatic change in circumstances with respect to all three parties—mother, father and I.G.—did not establish a prima facie case of changed circumstances. We have a long history in Minnesota of protecting established relationships between parent(s) and child and may not treat changes in such relationships as lacking significance or substance. *See Sefkow v. Sefkow*, 427 N.W.2d 203, 212 (Minn.1988) noting that we have "emphasized the importance of stability in custody determinations" and reaffirming our statement in *Pikula v. Pikula*, 374 N.W.2d 705, 711 n. 1 (Minn. 1985), that four of the nine best interests criteria in Minn.Stat. § 517.17, subd. 1, "rest on the centrality of continuity of care and environment."

Further, the failure of the district court to address this inevitable change in custody in a substantive manner leads directly to the second element—I.G.'s best interests. It is now over five-and-one-half years since the final decree dissolving the parents' marriage was entered, and over six-and-one-half years since the *LaChapelle* locale restriction was imposed. Further, I.G. has been in mother's sole physical custody since 1999. I.G.'s age has more than doubled since that date, and father's other children are out of his home or may soon be. Moreover, mother represents in her affidavit that I.G. wants to move to New York with mother to benefit from his continuing relationship with her and the more diverse educational opportunities that are available to him there. Whether these assertions will hold up at a hearing is not known, but surely they are sufficient to establish a prima facie case and cannot be summarily dismissed by the court by stating, "The only person I've got telling me that is [mother] as far as the want goes." *Goldman*, 725 N.W.2d at 760. While I conclude that mother's sole physical custody and impending move are enough to establish a prima facie case that modification may be in I.G.'s best interests under Minn.Stat. § 518.18(d), these additional factors make the call on the second element just that much easier.

For many of the foregoing reasons, I also disagree with the majority's analysis as to elements three and four—the impact on I.G.'s emotional health and emotional development and the weighing of the benefits and detriments to I.G. I find it difficult to question how a significant geographical separation from a parent, especially a parent who has sole physical custody for several years, does not at least amount to a prima facie showing that the separation may have an emotional impact on the child. If anything, we should start from the point that such a geographical separation from

the parent who has had sole physical custody for over the past half-dozen years will have an emotional impact. Further, I disagree with the majority's assertion that the statutory endangerment element only addresses the child's present environment not future events that the petitioner asserts will most likely happen. I conclude that it would be an absurd result to require I.G.'s mother to move to New York and inflict emotional harm on I.G. before she can have a hearing to determine whether I.G. may move with her when mother's marriage and move to New York is imminent and the danger of harm is apparent.

While the amended statute and our opinion today move us away from our holding and some of our conclusions in *Auge*, this separation from *Auge* does not, as the court of appeals properly concluded, undermine our conclusion that a denial of the primary caretaker's request for removal may have " ' "negative effects" and that district courts must consider the negative effects of separating the child and the [primary caretaker].' " *Goldman*, 725 N.W.2d at 757. (quoting *Auge*, 334 N.W.2d at 399). I.G. was born on January 30, 1996, the parties filed for dissolution of the marriage in December 1999, mother has had sole physical custody of I.G. since he was five-and-one-half years old, and he has spent the intervening time in the sole physical custody of mother. I.G. is now 12 years old.

As indicated earlier, I am not able to conclude from this record whether it is in I.G.'s best interests to go to New York to live with mother or to stay here with father. That is the problem—without an evidentiary hearing, there is no record. What I do know from this record is that there has been a prima facie showing that circumstances have changed for all parties since 1999 and 2001; I.G.'s emotional

health and emotional development may be endangered by mother's move and change in his physical custody; the benefits and detriments of the move have not been weighed; and in the end, I.G.'s best interests appear to be at stake. For me the threshold question in this case—whether mother has established a prima facie case for an evidentiary hearing under section 518.18(d)—is an easy call. I conclude that she has met that burden. Therefore, I would hold that the district court abused its discretion when it denied mother an evidentiary hearing and by so holding would affirm the result reached by the court of appeals to reverse and remand for an evidentiary hearing.