*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2214**

In re the Marriage of:
Rory Lane Smoot, petitioner,
Appellant,

vs.

Jacqueline Ann Smoot,
Respondent.

**Filed July 7, 2014
Affirmed
Peterson, Judge**

Olmsted County District Court
File No. 55-FA-08-2850

Steven C. Youngquist, Youngquist Law Office, Rochester, Minnesota (for appellant)

David L. Liebow, Restovich Braun & Associates, Rochester, Minnesota (for respondent)

Considered and decided by Peterson, Presiding Judge; Schellhas, Judge; and Connolly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**PETERSON**, Judge

In this appeal from an order granting respondent-mother's motion to relocate to another state with the parties' children and a judgment for attorney fees for mother, appellant-father argues that (1) the evidence does not support the district court's findings

on the children's best interests, and (2) the district court abused its discretion in awarding mother need-based attorney fees. We affirm.

## FACTS

Appellant-father Rory Lane Smoot and respondent-mother Jacqueline Ann Smoot were married in 2000 and divorced in 2008 by stipulated judgment and decree. They are the parents of five minor children. The dissolution judgment awarded the parties joint legal custody and awarded mother sole physical custody. Father was granted parenting time of a minimum of one non-overnight visit per week for all children, alternate weekends for children over age four from Friday evening until Sunday evening, a minimum of two weeks each summer for children age two and older, and alternating holidays. The dissolution judgment states, "It is intended that as the children get older [father] will spend more time with them consistent with their best interests and needs."

At the time of the divorce, the parties lived in Rochester, Minnesota, and father was employed by the Mayo Clinic. In 2012, father moved to Toronto, Canada, for two years of specialized medical training. In November 2012, mother filed a motion to relocate with the children to Chanute, Kansas.

At the evidentiary hearing on mother's motion, father testified that the medical training was required for him to obtain a permanent position with Mayo. Father testified that, before moving to Toronto, he explained to mother that the move was part of a plan to have a long-term, close relationship with the children. Father testified that, when he moved, he requested parenting time for the entire summer but was granted three and one-half weeks during the summer of 2012 and seven weeks during the summer of 2013.

Father was also granted one weekend of parenting time every other month but testified that, except for May and October 2013, he went to Rochester to see the children every month.

Mother testified that she planned to enroll at Pittsburg State University, which is near Chanute, to finish her education. Mother testified that her mother and other relatives live near Chanute and will be able to help her with the children. Mother testified that she could finish her education one or two semesters earlier in Kansas.

The district court granted mother's motion to relocate with the children to Chanute and awarded mother $10,000 in need-based attorney fees. The district court denied father's motion for amended findings and awarded mother an additional $1,120 in need-based attorney fees. Father appeals. Although the judgment for attorney fees was not entered until after this appeal was filed, this court extended review to the attorney-fee awards.

## D E C I S I O N

## I.

This court's review of a removal decision "is limited to considering whether the [district] court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Goldman v. Greenwood*, 748 N.W.2d 279, 284 (Minn. 2008) (quotation omitted). This court will set aside a district court's findings of fact only if clearly erroneous. *Id.*

A parent who has physical custody of a child subject to a parenting-time order may not remove the child to another state except upon a court order or with the consent

3

of the noncustodial parent. Minn. Stat. § 518.175, subd. 3(a) (2012). If the move is an attempt to defeat parenting time, the district court shall not permit the move. *Id.* In determining whether to permit a parent to change the children's residence to another state when the other parent opposes the move, the district court must base its decision on the best interests of the children by assessing eight statutory factors. Minn. Stat. § 518.175, subd. 3(b) (2012). The burden of proof is on the parent seeking to remove the children. *Id.,* subd. 3(c) (2012).

Father argues that, in assessing the first statutory factor, the children's relationship with both parents, siblings, and other significant persons, the district court's finding that father's role as a parent has been limited to the traditional father's role as breadwinner and authority figure is not supported by the parties' testimony. The district court found:

> By all accounts the children have a good relationship with their father, although perhaps the parent-child relationship is somewhat strained due to each child's understanding of Father's decisions regarding the family. There is no reason to believe the children cannot benefit from the love and support of both parents working together for their best interests.
>
> Father has played an important role in his children's lives. He has attended the children's school conferences and activities when his work schedule permits. But because of Father's demanding school and work schedules, his role as a parent has been limited to the traditional Father's role as bread-winner and authority figure.

The finding that father has attended the children's school conferences and activities when his work schedule permits indicates that father's role as a parent has been greater than the role of breadwinner and authority figure. But, when read in their

4

entirety, the findings indicate that although father has played an important role in the children's lives, father's demanding schedule has limited his role as a parent, which is supported by the parties' testimony. Also, father's expert, Judy Dawley, testified that the children felt "some anger" about father's "long, long work hours" and that "their dad left them" and recommended counseling to repair the relationship. Father objects to the district court's failure to consider the effect of relocation on the children's relationship with father's son with his fiancée. Dawley testified that, if the children relocate, "[t]hey won't get to develop much of a sibling relationship with him." The evidence supports the district court's findings that mother is the children's primary caretaker and that the children have close relationships with members of mother's family who live in the Chanute area, and, in addressing another statutory factor, the district court found that mother has supported the relationship between the children and their youngest brother. The district court did not clearly err in finding that the family-relationship factor favors mother.

Father argues that the district court erred in assessing the second statutory factor, the age, developmental stage, needs of the child, and the likely impact of relocation on those needs. One of the children suffers from a medical condition that requires yearly monitoring, and the Mayo Clinic is one of only 12 or 13 recognized centers in the country that specialize in treatment of the condition. Father argues that the district court's finding that "[t]his judge is not persuaded and does not find that a move to Chanute, Kansas, would jeopardize the health or safety of any of the children" improperly placed the burden of proof on father to establish that relocation would harm the child. The finding

5

does not suggest a shifting of the burden of proof but rather indicates that the court accepted mother's testimony that she would continue to bring the child to Rochester for monitoring after moving to Chanute.

Father argues that the district court erred in assessing the third statutory factor, the feasibility of preserving the relationship between father and the children through suitable parenting-time arrangements. Father argues that it is unrealistic for him to have one weekend of parenting time each month when the distance between Rochester and Chanute is 530 miles. But father's own testimony shows that options are available to make the schedule workable, including him traveling by plane to Chanute to exercise parenting time or the parties meeting in Des Moines, where father's brother resides.

Father argues that the district court erred in assessing the fifth statutory factor, whether there is an established pattern of conduct of the person seeking relocation to promote or thwart the relationship between the children and the nonrelocating parent. Father argues that the district court erred in finding that "Mother has done her best to promote each child's relationship with Father." This finding is supported by mother's testimony that she has always encouraged a healthy relationship between the children and father, believes that relationship is very important to the children, and will continue to work hard to support it.

Father argues that the district court erred in considering mother's happiness as a factor favoring relocation. In assessing the sixth statutory factor, whether relocation will enhance the general quality of life for both the custodial parent and children, the district court found:

6

Mother also testified that she would be substantially happier back in her hometown with her family. The court finds Mother's testimony credible, and further finds that the children will reap the benefit of Mother being less stressed and having a happier disposition. Father claims that Mother's happiness is not relevant. But this Judge finds that happiness includes such characteristics as a sense of well-being, self-fulfillment and peace of mind. Mother should be entitled to pursue her happiness, not to the exclusion of her obligation to the children, but to strengthen her for the hard work of raising teenagers that lies ahead. Father has chosen to pursue his career by moving to Toronto, Canada. This factor favors Mother.

Father argues that the evidence does not support the district court's finding that the children are affected by mother's stress, but mother testified that her stress does affect the children. Father also argues that the children are well-adjusted in Rochester. But mother's testimony supports the district court finding that mother could not attain her education in Rochester without compromising her parenting style.

Father argues that the evidence does not support the district court's finding that father has been financially controlling or otherwise manipulative. Mother's testimony about father manipulating her during and after the divorce and her need to complete her education to become financially stable supports this finding.

Father argues that comments by the district court during the hearing and its findings on father's plan to return to Rochester in 2014 show a bias against father. During the hearing, the district court commented on father's decision to move to Toronto for two years during the children's formative years. The district court's comments do not show bias. Just as father needed to leave Rochester to complete his education, mother presented valid reasons for moving to Chanute to complete her education, including that

7

having her family nearby to help with the children will enable her to complete her education sooner. Regarding father's plan to return to Rochester, although the district court noted that the future is always uncertain, it found that father's return to Rochester was likely and that the seventh statutory factor, the reasons of each parent for seeking or opposing relocation, was neutral.

The district court made detailed findings on the children's best interests, and those findings support the decision to permit mother to relocate to Chanute with the children.

## II.

The court "shall" award attorney fees if it finds that (1) the fees are necessary for a good-faith assertion of rights; (2) the payor has the ability to pay the award; and (3) the recipient does not have the means to pay his or her own fees. Minn. Stat. § 518.14 subd. 1 (2012). In a dissolution case, the issue of attorney fees "rests almost entirely within the discretion of the trial court and will not be disturbed absent a clear abuse of discretion." *Crosby v. Crosby,* 587 N.W.2d 292, 298 (Minn. App. 1998) (quotation omitted), *review denied* (Minn. Feb. 18, 1999).

Father argues that mother did not file a motion for attorney fees as provided for in Minn. R. Gen. Pract. 119.01. But in its January 13, 2013 order, the district court stated that it might consider an award of attorney fees, and mother requested attorney fees at the evidentiary hearing. The evidence supports the district court's finding that father was not prejudiced by the lack of a formal motion.

Father's income is $244,000 per year. Mother receives $1,200 per month in maintenance and $3,256 in child support. The district court awarded $10,000 in attorney

8

fees, one-half of the amount incurred in pursuing the relocation motion, and an additional $1,120 incurred in responding to father's motion for amended findings. The evidence supports the district court's findings that father has the ability to contribute to mother's attorney fees and that mother did not have sufficient resources or income to pay all of the fees. The district court did not abuse its discretion in awarding mother $11,120 in attorney fees.

**Affirmed.**