*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0418**

In re the Matter of:

Calvin James Omtvedt, petitioner,
Respondent,

vs.

Amanda Marie Jansen,
Appellant.

**Filed January 12, 2015
Affirmed
Schellhas, Judge**

Washington County District Court
File No. 82-FA-13-2782

Allison L. Marshall, LEGAL*nudge*, LLC, Minneapolis, Minnesota (for respondent)

Kathryn M. Lammers, Heimerl & Lammers, Minneapolis, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Johnson, Judge; and Stoneburner, Judge.[*]

**U N P U B L I S H E D   O P I N I O N**

**SCHELLHAS**, Judge

Appellant seeks reversal of a district court order modifying physical custody and parenting time. We affirm.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**FACTS**

Appellant Amanda Marie Jansen and respondent Calvin James Omtvedt are the parents of M.O., born July 19, 2003. Jansen was M.O.'s primary caretaker from M.O.'s birth until April 2013, and Omtvedt was involved in M.O.'s care and support. In November 2008, Omtvedt commenced an action, seeking an adjudication of his paternity, a grant of joint legal and physical custody of M.O., and the establishment of child support. In January 2009, based on the parties' stipulation, the district court adjudicated Omtvedt the father of M.O.; granted Jansen and Omtvedt joint legal custody of M.O.; granted Jansen sole physical custody of M.O., subject to Omtvedt's right of "reasonable and liberal" parenting time; and established Omtvedt's child-support obligation.

In May 2011, M.O.'s school made a mandatory report of educational neglect of M.O. to Isanti County Family Services, arising from M.O.'s school absences and tardiness and Jansen's failure to engage in the school's attempts to address M.O.'s attendance. Isanti County quickly "[s]creened out" the report and closed its file on M.O. because of the imminent school-year end. But Isanti County sent a letter to Jansen and a copy to Omtvedt, informing Jansen of the educational-neglect report and urging her to address M.O.'s attendance issues "immediately."

M.O. changed schools and, in February 2013, M.O.'s new school made a mandatory report of educational neglect of M.O. to Washington County Community Services. In March, a Washington County educational-neglect social worker conducted a diversion meeting with Jansen and M.O.'s school principal. In April, an incident in

Jansen's home resulted in a report of child maltreatment of M.O. and an investigation that preempted Washington County's educational-neglect diversion efforts.

The reported child-maltreatment incident occurred on April 14, 2013, after Jansen left her home for an extended social outing that included her intermittent consumption of alcohol, leaving at home nine-year-old M.O., her ten-year-old schoolmate, and M.O.'s six-year-old and four-year-old half-siblings. Shortly after Jansen's departure, an unrelated adult babysitter arrived at the home, but he left the home and the children at approximately 10:30 p.m. After the babysitter's departure, M.O. tried unsuccessfully for several hours to reach Jansen on her cell phone. Around 5:00 a.m. on April 15, M.O. called Omtvedt, who called the police and went to Jansen's home. As a result of this incident, the police placed M.O. in Omtvedt's custody and M.O.'s half-siblings in the custody of a family friend. Jansen did not return home until late morning on April 15.[1]

On April 15, 2013, the district court issued an ex parte order for the protection (OFP) of M.O. and granted Omtvedt temporary sole legal and physical custody of M.O., subject to Jansen's supervised parenting time. Washington County investigated the child-maltreatment report, determined that maltreatment had occurred, and concluded that a preponderance of evidence supported a finding of neglect, i.e., "Failure to Provide Necessary Supervision or Child Care Arrangements according to Minnesota Statute 626.556, subd. 2(f)(3)." Jansen agreed to participate in ongoing child-protection case management. The district court appointed a guardian ad litem (GAL) for M.O., and on

---

[1] Washington County charged Jansen with child neglect or endangerment on April 16, 2013, and dismissed the charges on September 24.

May 22, Jansen and Omtvedt reached an agreement that, pending an evidentiary hearing, M.O. would remain in Omtvedt's sole physical custody, subject to Jansen's unsupervised parenting time. Based on the parties' stipulation, the district court dismissed the OFP. In June, Omtvedt moved to modify custody, seeking sole legal and physical custody, subject to Jansen's unsupervised parenting time. The district court found that Omtvedt presented a prima facie case for modification and scheduled an evidentiary hearing. Pending the hearing, the court awarded Omtvedt temporary custody, subject to Jansen's parenting time, consistent with the parties' May 22 stipulation.

Following a three-day evidentiary hearing in the fall of 2013, the district court modified custody by granting joint legal custody to Jansen and Omtvedt and sole physical custody to Omtvedt, subject to Jansen's right of parenting time.

This appeal follows.

## D E C I S I O N

"Appellate review of custody modification . . . cases is limited to considering whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Goldman v. Greenwood*, 748 N.W.2d 279, 284 (Minn. 2008) (quotations omitted). A district court's findings of fact are not set aside on appeal unless they are clearly erroneous. *Id.* (citing Minn. R. Civ. P. 52.01). "Findings of fact are clearly erroneous where an appellate court is left with the definite and firm conviction that a mistake has been made." *Id.* (quotation omitted). This court reviews the record in a light most favorable to the district court's findings, *Frauenshuh v. Giese*, 599 N.W.2d 153, 156 (Minn. 1999), *superseded by statute in part on other grounds*, Minn.

4

Stat. § 518.18(d)(i) (2000), "giving deference to the district court's opportunity to evaluate witness credibility," *Goldman*, 748 N.W.2d at 284. "That the record might support findings other than those made by the trial court does not show that the court's findings are defective." *Vangsness v. Vangsness*, 607 N.W.2d 468, 474 (Minn. App. 2000) (discussing review of best-interests factors on appeal of initial custody award).

To modify custody on the basis of child endangerment, a district court must make four distinct findings that: (1) a change has occurred in the circumstances of either party, both parties, and/or the child; (2) modification is necessary to serve the child's best interests; (3) the child's present environment endangers her physical or emotional health or impairs her emotional development; and (4) the benefits of modification outweigh the detriments with respect to the child. Minn. Stat. § 518.18(d) (2014);[2] *see also Goldman*, 748 N.W.2d at 284 (referring to statutory balancing of harm against advantage as balancing of benefits against detriments).

*Change in circumstances*

"What constitutes changed circumstances for custody-modification purposes is determined on a case-by-case basis." *Sharp v. Bilbro*, 614 N.W.2d 260, 263 (Minn. App. 2000) (quotation omitted), *review denied* (Minn. Sept. 26, 2000). "[T]here must be a real change and not a continuation of ongoing problems." *Spanier v. Spanier*, 852 N.W.2d 284, 288 (Minn. App. 2014) (quotation omitted). "The change in circumstances must

---

[2] We apply the most recent version of the statutes in this opinion, except where the statutes have been amended in relevant part. *See Interstate Power Co. v. Nobles Cnty. Bd. Of Comm'rs*, 617 N.W.2d 566, 575 (Minn. 2000) (stating that, generally, "appellate courts apply the law as it exists at the time they rule on the case").

have occurred since the original custody order; it cannot be a continuation of conditions existing prior to the order." *Id.* (quotation omitted). But "the escalation of dubious behavior of a custodial parent" may constitute a change in circumstances even if the behavior began prior to the original custody order, at least where the behavior has "increasingly harmful effects" on the child. *See id.* at 290 (quotation omitted); *cf. Tarlan v. Sorensen*, 702 N.W.2d 915, 923 (Minn. App. 2005) (concluding that substantial change in circumstances had occurred since original custody decision after stating that, although father began expressing concern about daughter's disproportionate weight gain around time of initial custody determination, his concern had escalated in recent years).

Here, Jansen asserts that the district court failed to make a finding that circumstances have changed since the 2009 stipulated custody order. Jansen is incorrect. Referring to the 2009 stipulated custody order, the district court stated that the evidence "support[s] a finding that a change in circumstances since the time of the prior [custody] order has occurred." Jansen also argues that the court erroneously based its changed-circumstances finding on the parties' temporary custody arrangement and that "to find this . . . as a change in circumstances would not satisfy the statutory requirement for a significant change and would be illogical." We acknowledge that Jansen should not be prejudiced by the temporary custody order. *See* Minn. Stat. § 518.131, subd. 9(a) (2014) (providing that a temporary order does "not prejudice the rights of the parties or the child which are to be adjudicated at subsequent hearings in the proceeding"). But Jansen's argument is nonetheless unpersuasive. The court's reference to "[t]he change in the actual parenting time schedule" clearly refers back to its preceding finding that "when [Jansen]

6

moved to Woodbury in 2011, by agreement of the parties, [Omtvedt]'s parenting time increased to approximately half of the time." The record supports the fact that, from sometime in 2011 to April 2013, under an informal agreement with Jansen, Omtvedt exercised approximately 50% parenting time with M.O. Omtvedt's increased parenting time was neither the result of a temporary custody order nor an insignificant deviation from the 2009 stipulated custody order.

Claiming that the April 14–15, 2013 incident was simply "a one-time lapse in judgment," Jansen argues that the incident does not meet the requisite change in circumstances necessary to modify a custody order. But the district court specifically found that Jansen's explanation about the incident was not "plausible or credible" and rejected Jansen's attempts to minimize her role in the incident. The district court found that the record contained "significant support" for "a finding of neglect on the evening of April 14–15, 2013." The court's finding is supported by the record. Moreover, Jansen offers no authority to support a proposition that a single instance of child neglect cannot evidence changed circumstances.

Jansen challenges the district court's identification of "the clear pattern of educational neglect" as evidence of changed circumstances, arguing that reliance on a pattern of behavior implies that no significant change in circumstances occurred. The record reflects that Jansen's educational neglect of M.O. began when M.O. entered kindergarten in 2008—before the 2009 stipulated custody order. The record also reflects that the neglect worsened over the years. The GAL noted that "[i]n [M.O.]'s most recent third and fourth grade years [in 2011–2013,] the problem was becoming significantly

worse, not better." The record reflects that Jansen's educational neglect was having "increasingly harmful effects" on M.O. as the academic and social demands of school grew at each grade level. *See Spanier*, 852 N.W.2d at 290. The court was not obligated to ignore "the escalation of [Jansen's] dubious behavior" even though the behavior was not new. *See id.* (quotation omitted).

We conclude that the district court's changed-circumstances finding is not clearly erroneous.

*Best interests*

"The guiding principle in all custody cases is the best interest of the child." *Durkin v. Hinich*, 442 N.W.2d 148, 152 (Minn. 1989). In the custody-modification context, a child's best interests are determined with reference to 13 non-exclusive factors listed in Minn. Stat. § 518.17, subd. 1(a) (2014). *See Tarlan*, 702 N.W.2d at 924. "[T]he law leaves scant if any room for an appellate court to question the district court's balancing of best-interests considerations." *In re Child of Evenson*, 729 N.W.2d 632, 635 (Minn. App. 2007) (quotation omitted), *review denied* (Minn. June 19, 2007).

Jansen generally asserts in her brief that the district court abused its discretion by modifying custody "when there was a lack of evidence regarding any of the requirements under Minn. Stat. § 518.18." Construing Jansen's general assertion as an argument that the district court's best-interests finding is not supported by sufficient evidence, we conclude that the argument is meritless. In making its best-interests finding, the court stated that it was applying section 518.17 and discussed each of the 13 factors in the statute. The court's factor-by-factor explanation of its best-interests finding is supported

8

by ample documentary and oral evidence gathered during the three-day evidentiary hearing. We conclude that the district court's best-interests finding is not clearly erroneous.

*Endangerment/impairment*

"Endangerment" is not defined in Minnesota Statutes section 518.18 (2014), in the definitions section of chapter 518, or in any other section of the family-law statutes. "The concept of 'endangerment' is unusually imprecise, but a party must demonstrate a significant degree of danger to satisfy the endangerment element of section 518.18(d)(iv)." *Goldman*, 748 N.W.2d at 285 (quotations omitted). Endangerment in the context of custody modification "includes danger purely to emotional and psychological development." *Tarlan*, 702 N.W.2d at 922.

This court has stated that "to establish danger to a child's welfare, a parent's conduct must be shown to result in an actual adverse effect on the child." *In re Weber*, 653 N.W.2d 804, 811 (Minn. App. 2002); *see also Dabill v. Dabill*, 514 N.W.2d 590, 595–96 (Minn. App. 1994) ("Normally, given the statutory requirement for proof of endangerment as a condition for a custody modification, the conduct or circumstance of a parent, including visitation interference, does not establish danger to the welfare of children without evidence of actual adverse effects."). Actual adverse effects that "have served as indications of endangerment to a child's physical and emotional health" include "[b]ehavioral problems and poor school performance by the child." *Weber*, 653 N.W.2d at 811 (citing *Kimmel v. Kimmel*, 392 N.W.2d 904, 908 (Minn. App. 1986), *review denied* (Minn. Oct. 29, 1986)).

This court has upheld an endangerment finding that was based on evidence of anticipated adverse effects of the current custodial environment. *See Sharp*, 614 N.W.2d at 263–64 (concluding that record supported finding of endangerment when it contained testimony that mother's alleged present conduct "*will* cause emotional psychological damage to her child," that absent suggested therapy mother "would pose emotional damage to her child," and that "[mother]'s perceptions of reality may interfere with her ability to parent, and, without treatment, [mother] may lack the ability to check her behavior" (quotations omitted)); *see also Johnson-Smolak v. Fink*, 703 N.W.2d 588, 591 (Minn. App. 2005) ("'Endangerment' implies a significant degree of danger or *likely* harm to the child's physical or emotional state." (emphasis added)). Although the supreme court has made clear that "the endangerment element of section . . . 518.18(d)(iv) is concerned with whether the child's *present environment* endangers the child's physical or emotional health or impairs the child's emotional development, not whether the child may be endangered by future events," *Goldman*, 748 N.W.2d at 285 (quotation and citation omitted), the supreme court has never stated that an endangerment finding cannot be based on evidence of an anticipated imminent adverse effect of the present environment.

Here, the district court specifically found that M.O.'s school absences and tardiness are serious issues and resulted in M.O. being endangered while in Jansen's care. The court rejected Jansen's explanation that M.O.'s absences were caused by her ear infections. Jansen challenges the "accura[cy]" of and evidentiary support for the district court's finding, but the record contains ample evidence that M.O. missed an excessive

10

amount of school, that Jansen's educational neglect contributed to M.O.'s attendance issues, and that M.O.'s emotional and psychological development was endangered as a result.

Jansen argues that the "trial court improperly modified the original custody order because there was no evidence of an actual and adverse effect on [M.O.] so as to support a finding of endangerment." Assuming without deciding that an endangerment finding must be based on evidence of actual adverse effect, we conclude that the district court identified such evidence in this case:

> Testimony was presented that supports a finding that the adverse impact the endangerment had on [M.O.] The GAL testified and set forth in his report that [M.O.] exhibited behavior that demonstrated a maturity level beyond what she should have at her age. School records and child protection records clearly demonstrate that the school representatives expressed concern that she was missing too much school and was missing out on classroom assignments and that this was having a negative impact on her education. As a result of the April 14–15 incident, she was still having issues dealing with what happened that night and the resulting events.

> . . . While testimony supports that [M.O.] is smart and has historically done well in school, a finding can be made that her potential was greater than she was reaching and was negatively impacted by her absences.

Indeed, in the GAL's final report, the GAL opined that "it would not be in [M.O.]'s best interests to take further risks with her educational stability or success" and recommended that "[Omtvedt] should have primary responsibility for [M.O.]'s care and supervision during each school year." And the district court denied Jansen's motion to exclude the GAL's final report and to bar the GAL from testifying at the evidentiary hearing. The

11

evidence of actual adverse effect, identified by the court in its above finding, is in the record and supports the court's finding. Jansen's argument to the contrary has no merit. The court's endangerment finding is not clearly erroneous.

In this case, based on the common meaning and usage of "endangerment," we conclude that the evidence of an anticipated imminent adverse effect satisfies the evidentiary standard necessary to support the district court's finding of endangerment. *See* Minn. Stat. § 645.08(1) (2014) (providing that undefined statutory "words and phrases are construed according to rules of grammar and according to their common and approved usage"); *The American Heritage Dictionary of the English Language* at 460, 589, 880, 1306 (4th ed. 2006) (defining "endanger" as "[t]o expose to harm or danger; imperil," defining "danger" as "[e]xposure or vulnerability to harm or risk," defining "imperil" as "[t]o put into peril," and defining "peril" as "[e]xposure to the risk of harm or loss").

*Benefits and detriments*

Jansen asserts that the district court "failed to weigh the harm likely to be caused by a change of the environment and the advantage of a change to [M.O.]." This assertion is meritless because the district court expressly found that "[t]he benefit to [M.O.] by providing her with consistency throughout the school year and consistency in her school attendance outweighs any negative from the change."

Jansen apparently disagrees with the district court's finding that the benefits of modification outweigh the detriments, but the finding is supported by the record and Jansen points to no evidence in the record that supports a contrary finding. Moreover,

12

whether the record might support a different finding is irrelevant. *See Vangsness*, 607 N.W.2d at 474 ("That the record might support findings other than those made by the trial court does not show that the court's findings are defective."). We conclude that the district court's benefits-and-detriments finding is not clearly erroneous.

*Parenting time*

The district court characterized its grant of parenting time to Jansen as "liberal and reasonable." The district court did not address the "rebuttable presumption that a parent is entitled to receive at least 25[%] of the parenting time for the child." Minn. Stat. § 518.175, subd. 1(g) (2014). This court has stated that a district court must "demonstrate an awareness and application of the 25% presumption when the issue is appropriately raised and the court awards less than 25% parenting time." *Hagen v. Schirmers*, 783 N.W.2d 212, 217 (Minn. App. 2010). Jansen argues that the district court's failure to do so is reversible error. But Jansen did not raise the issue of the 25% parenting-time presumption before the district court. The court therefore was not required to address it. *See Hagen*, 783 N.W.2d at 214, 217, 219 & n.4 (reasoning that "district court was alerted that [proposed] parenting-time schedule would violate" 25% parenting-time presumption, stating that "[t]his is important because we do not consider matters not argued to and considered by the district court," and reversing and remanding for district court to, inter alia, "determine parenting-time with due regard for the rebuttable presumption that father receive 25% parenting time").

Jansen also argues that the district court "improperly created a restriction" on her parenting time without making findings about why her parenting time should be

13

restricted. Citing Minn. Stat. § 518.175, subd. 5, Jansen asserts that to lawfully create a parenting-time restriction, the court must make a finding of endangerment or noncompliance with court orders. Indeed, the 2012 version of subdivision 5 provides that a court "may not restrict parenting time unless it finds that . . . parenting time is likely to endanger the child's physical or emotional health or impair the child's emotional development." Minn. Stat. § 518.175, subd. 5 (2012). But Jansen did not argue before the district court that modification of custody and parenting time constitutes a restriction of her parenting time within the meaning of Minn. Stat. § 518.175, subd. 5. Jansen therefore waived the issue, and this court need not reach it. *See Hagen*, 783 N.W.2d at 219 (stating that this court "do[es] not consider matters not argued to and considered by the district court").

Moreover, by its terms, subdivision 5 applies to a "modif[ication of] . . . an order granting or denying parenting time, *if the modification would not change the child's primary residence*." Minn. Stat. § 518.175, subd. 5 (emphasis added). Here, the district court's modification of physical custody and parenting time did change M.O.'s primary residence—from Jansen's home to Omtvedt's home. Consequently, Jansen's argument lacks merit because Minnesota Statutes section 518.18(d)(iv) applies, rather than section 518.175, subdivision 5.

**Affirmed.**