*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1356**

In re the Marriage of:

Asma Javed, petitioner,
Respondent,

vs.

Rizwan Siwani,
Appellant.

**Filed June 3, 2024**
**Affirmed**
**Johnson, Judge**

Olmsted County District Court
File No. 55-FA-17-4761

Steven P. Groschen, Terrance J. Zawacki, David A. Samb, Alliance Law Firm, P.A., Rochester, Minnesota (for respondent)

Gary A. Debele, Sydnie M. Peterson, Messerli & Kramer, P.A., Minneapolis, Minnesota (for appellant)

　　　Considered and decided by Johnson, Presiding Judge; Cochran, Judge; and Kirk, Judge.[*]

---

　　　[*]Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**NONPRECEDENTIAL OPINION**

**JOHNSON**, Judge

In this post-dissolution matter, the mother of the parties' two children moved for leave to relocate to Illinois with the children. The district court granted the motion and modified the prior award of parenting time. The father challenges the ruling on multiple grounds. We conclude that the district court did not err in any of its rulings. Therefore, we affirm.

**FACTS**

Asma Javed and Rizwan Siwani were married in 2007. They have two joint minor children, who were born in 2011 and 2015. The parties separated in 2015, and Javed petitioned for dissolution of the marriage in December of that year.

In November 2017, the parties stipulated to a dissolution decree, which was adopted by the district court. The stipulated decree awarded the parties joint legal custody and joint physical custody. The decree initially provided Siwani, the father, with parenting time on two weekday evenings each week (Tuesday and Thursday) and on every other weekend from 5:00 p.m. Friday until 7:00 p.m. Sunday. The decree further provided that, when the younger child started kindergarten, Siwani's weekend parenting time would be extended to Monday morning when the children were dropped off at school or daycare. In addition, the decree provided the parties with equal amounts of parenting time for holidays, one seven-day vacation per year within the United States for each party, and one ten-day vacation to Pakistan for each party every other year.

2

At the time of the decree, both parties resided in and worked in Olmsted County. In May 2023, approximately five and one-half years after the decree, Javed moved for an order allowing her to relocate, with the children, to Naperville, Illinois, a suburb of Chicago, and modifying the parenting-time schedule. Javed argued in a memorandum that relocation would be in the children's best interests and that an evidentiary hearing is not required. Siwani opposed Javed's motion by filing a counter-motion and an affidavit but not a memorandum of law.

The district court conducted a motion hearing at which the parties presented oral arguments. In July 2023, the district court granted Javed's motion by allowing her to relocate. In an attached memorandum, the district court analyzed the best-interests factors and determined that relocation would promote the children's best interests. The district court modified the parenting-time schedule to provide Siwani with parenting time for a continuous eight-week period each summer, for the entirety of the children's winter breaks from school, and for the entirety of the children's spring breaks from school. In addition, the district court ordered the parties to "work together to facilitate additional parenting time if Father travels to Illinois to visit the parties' joint children during the school year."

Siwani requested leave to file a motion to reconsider. The district court denied the request. In mid-August 2023, Siwani filed a motion requesting an evidentiary hearing on the modification of the parenting-time schedule and requesting a stay of the July 2023 order. The district court conducted a motion hearing on the following day. At the conclusion of the hearing, the district court orally denied Siwani's motion. In early

September 2023, the district court filed a ten-page order and memorandum stating reasons for the denial of Siwani's motion. Siwani appeals.

## DECISION

## I. Restriction of Parenting Time

Siwani first argues that the district court erred by granting Javed's motion without finding that the pre-existing parenting-time schedule was likely to endanger the children.

If two parents share custody of a joint minor child, a parent's motion to relocate to another state with the child is governed by the following statute:

> The parent with whom the child resides shall not move the residence of the child to another state except upon order of the court or with the consent of the other parent, if the other parent has been given parenting time by the decree. If the purpose of the move is to interfere with parenting time given to the other parent by the decree, the court shall not permit the child's residence to be moved to another state.

Minn. Stat. § 518.175, subd. 3(a) (2022). In considering such a motion, a district court "shall apply a best interests standard," which includes eight factors specified by statute. *Id*., subd. 3(b), 3(b)(1)-(8).

Siwani contends that the district court erred by considering only section 518.175, subdivision 3(a), when ruling on Javed's motion. He contends that the district court also should have applied another subdivision of the same statute, which provides:

> [T]he court may not *restrict* parenting time unless it finds that:
>
> (1)     parenting time is likely to endanger the child's physical or emotional health or impair the child's emotional development; or

(2)     the parent has chronically and unreasonably failed to comply with court-ordered parenting time.

Minn. Stat. § 518.175, subd. 5(c) (emphasis added).  Siwani contends that the district court erred by "restricting" his parenting time without making either of the findings required by section 518.175, subdivision 5(c).

Whether section 518.175, subdivision 5(c), applies to a motion to modify parenting time depends on whether the requested modification is characterized as a "restriction." *Suleski v. Rupe*, 855 N.W.2d 330, 336 (Minn. App. 2014).  "There is no statutory definition of what constitutes a 'restriction' of parenting time."  *Id.*  "To determine whether a reduction in parenting time constitutes a restriction or modification, the court should consider the reasons for the changes as well as the amount of the reduction."  *Dahl v. Dahl*, 765 N.W.2d 118, 124 (Minn. App. 2009) (quotation omitted).  A reduction in parenting time "is not necessarily a restriction of parenting time"; rather, a restriction may occur if "a change to parenting time is 'substantial.'"  *Id.* at 123-24 (quotation omitted).  "Less substantial alterations" of parenting time are simply "modifications" but not restrictions. *Lutzi v. Lutzi*, 485 N.W.2d 311, 315 (Minn. App. 1992).

In this case, the district court, in its first order, filed in July 2023, did not consider whether Javed's requested modification of the parenting-time schedule would be a "restriction," presumably because Siwani did not make such an argument.  The district court considered the issue in its second order, filed in September 2023, in which it denied Siwani's belated request for an evidentiary hearing.  With respect to the purpose of the modification, the district court reasoned that it "was not to restrict or reduce Father's

5

parenting time" but, rather, "was done solely as a necessary, collateral consequence of Mother moving with the joint children to Naperville," where her new husband resides. With respect to the amount of the modification, the district court reasoned that it "is not substantial enough to constitute a restriction." Specifically, the district court adopted Siwani's assertion that the modified parenting-time order gives him 70 to 80 parenting-time overnights per year. The district court also noted that Siwani is entitled to an undefined amount of parenting time in Illinois on weekends, that he has the means and flexibility to do so, and that he potentially could enjoy 40 additional overnights per year, for a total of 120 overnights per year. Consequently, the district court determined that the modification "does not significantly reduce Father's number of overnights."

Siwani contends that the district court erred in its determination that the modification of his parenting time does not constitute a restriction. Siwani first contends that the amount of his parenting time has been substantially reduced. Courts determine the amount of a reduction by comparing "the modified amount of parenting time" to the "baseline parenting time set forth in the judgment and decree." *Suleski*, 855 N.W.2d at 337 (quotation omitted). Siwani asserts that he previously had a right to see his children for at least a part of 182 days per year, that he now has an unqualified right to see them only 70 to 80 days per year, and that the loss of more than half of his parenting time indicates a substantial modification. In response, Javed, using a different method of calculation, asserts that Siwani's potential number of overnights actually has increased from 116 to a number between 123 and 217.

6

Neither party has provided the court with a reasonable accounting of Siwani's parenting time before and after the modification. For purposes of determining whether a reduction in the amount of parenting time may indicate a restriction, this court typically quantifies the amount of parenting time based on the number of overnights. *See, e.g., Suleski*, 855 N.W.2d at 337. Under the decree, Siwani previously had a right to 78 overnights per year, after the younger child started kindergarten (26 weekends x 3 nights/weekend = 78). The district court determined that, after the modification, Siwani has a right to at least 70 to 80 overnights per year. That numerical range includes the 78 overnights that were awarded to Siwani in the decree. Under the most common and straightforward means of measurement, there has been no substantial change in the amount of Siwani's parenting time. *See Dahl*, 765 N.W.2d at 123-24 (stating that restriction "occurs when a change to parenting time is substantial").[1]

---

[1]Siwani suggests that we also should consider amounts of parenting time that are independent of an overnight. He relies on two statutes that authorize a district court to determine a party's percentage of parenting time by other means. One statute allows a district court to determine the percentage of parenting time "by using a method other than overnights if the parent has significant time periods on separate days . . . but does not stay overnight." Minn. Stat. § 518.175, subd. 1(g) (2022). The other statute has similar language and uses the term "overnight equivalents. Minn. Stat. § 518A.36, subd. 1(a) (2022). Both statutes expressly state that the alternative means of determining percentage of parenting time is authorized "[f]or purposes of this paragraph" or "[f]or purposes of this section." Minn. Stat. §§ 518.175, subd. 1(g), 518A.36, subd. 1(a). It appears that neither the supreme court nor this court has applied those statutes to determine whether the amount of a parenting-time reduction is a restriction. Even if we were to apply the statutes, Siwani's previous right to two hours of parenting time on Tuesday and Thursday evenings likely would not qualify as "significant time periods." And even if it would, the result would not change. Four hours of parenting time per week is equal to approximately eight or nine 24-hour days per year. Adding that number to Siwani's previous right to 78 overnights would result in a total of 87 overnights or overnight equivalents. A reduction from 87 to 77 is approximately 11 percent. Our caselaw indicates that a reduction of that

Siwani also asserts that Javed's purpose for seeking a modification of parenting time indicates that the reduction in his parenting time is a restriction. Siwani asserts that Javed was motivated by animus toward him, as demonstrated by certain statements in her affidavit that reflect negatively on him. In response, Javed points to the district court's ruling on her motion to relocate, in which the district court stated that "[o]ne of the primary reasons for the move to Naperville . . . is the educational, cultural, and religious opportunities for the joint children" and that Javed "has not expressed that the move is motivated by a desire to remove the children from [Siwani's] care for safety or welfare reasons." Siwani has not established that the district court abused its discretion in making these findings. The reasons for Javed's relocation, as described by the district court, do not indicate a restriction.

Thus, given that Siwani's parenting time was not reduced in amount and given the reasons for the modification, the district court did not err by determining that the modification of Siwani's parenting time is not a "restriction." In light of that conclusion, the district court did not err by not applying the endangerment standard in section 518.175, subdivision 5(c), which applies only if a district court "restricts" parenting time. Similarly,

---

proportion, by itself, does not indicate a restriction on parenting time. *See Suleski*, 855 N.W.2d at 337 (concluding that reduction of approximately seven percent was not restriction); *Danielson v. Danielson*, 393 N.W.2d 405, 406-08 (Minn. App. 1986) (concluding that reduction from every other weekend to six weeks per year (*i.e.*, 52 overnights to 42 overnights, or 19%) was not restriction); *cf. Clark v. Clark*, 346 N.W.2d 383, 385-86 (Minn. App. 1984), *rev. denied* (Minn. June 12, 1984) (concluding that reduction from 14 weeks to five and one-half weeks (*i.e.*, 61%) was restriction).

because a finding of endangerment was not required, the district court did not err by not conducting an evidentiary hearing pursuant to section 518.175, subdivision 5(d).

## II. Presumptive Minimum Amount of Parenting Time

Siwani also argues that the district court erred by not awarding him at least 25 percent of parenting time and by not stating any reasons why it did not do so. Siwani relies on a statute that provides, "In the absence of other evidence, there is a rebuttable presumption that a parent is entitled to receive a minimum of 25 percent of the parenting time for the child." Minn. Stat. § 518.175, subd. 1(g) (2022).

In her responsive brief, Javed argues that Siwani forfeited this argument by not presenting it to the district court. This court has stated that district courts must "demonstrate an awareness and application of the 25% presumption *when the issue is appropriately raised* and the court awards less than 25% parenting time." *Hagen v. Schirmers*, 783 N.W.2d 212, 217 (Minn. App. 2010) (emphasis added). We specifically noted in *Hagen* that "the district court was alerted that mother's parenting-time schedule would violate subdivision 1(e)." *Id.* at 219. The fact that the issue "was brought to the attention of the district court" was "important because we do not consider matters not argued to and considered by the district court." *Id.* at 219 n.4 (citing *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988)). Since *Hagen*, this court repeatedly has concluded that an appellant forfeited an argument based on the presumed 25-percent minimum by not making the argument to the district court. *See, e.g.*, *Stilwagon v. Stilwagon*, No. A21-0739, 2022 WL 92964, at *4 (Minn. App. Jan. 10, 2022); *Ryan v. Ryan*, No. A18-1526, 2019 WL 4254831, at *3 (Minn. App. Sept. 9, 2019); *In re Custody of N.O.K.*, No. A16-0570, 2016

WL 6570302, at *8 (Minn. App. Nov. 7, 2016), *rev. denied* (Minn. Jan. 25, 2017); *Phelps v. Sterling*, No. A14-1107, 2015 WL 5088926, at *7 (Minn. App. Aug. 31, 2015); *Covington v. Eckstrom*, No. A14-1262, 2015 WL 3822862, at *7 (Minn. App. June 22, 2015); *Omtvedt v. Jansen*, No. A14-0418, 2015 WL 134015, at *6 (Minn. App. Jan. 12, 2015); *see also* Minn. R. Civ. App. P. 136.01, subd. 1(c) (providing that nonprecedential opinions are "not binding  authority" but "may be cited as persuasive authority").

In his reply brief, Siwani acknowledges that he "never explicitly raised the issue of the 25% presumption for parenting time at the district court level."  He contends that the issue was "inherently implicated and raised" because he expressly challenged the amount of the reduction in his parenting time.  Siwani's contention fails because he did not specifically ask the district court to award him at least 25 percent of parenting time and did not refer to section 518.175, subdivision 1(g).

Thus, Siwani has forfeited the argument that the district court erred by not awarding him at least 25 percent of parenting time pursuant to section 518.175, subdivision 1(g). Accordingly, we will not consider the issue for the first time on appeal.

### III.  Best Interests

Siwani next argues that the district court erred by concluding that Javed's relocation to Illinois promotes the children's best interests.

As stated above, a district court "shall apply a best interests standard when considering the request of the parent with whom the child resides to move the child's residence to another state."  Minn. Stat. § 518.175, subd. 3(b).  A district court must consider eight factors specified by statute.  *Id.*, subd. 3(b)(1)-(8).  We apply an abuse of

10

discretion standard to a district court's determination that relocation is in the best interests of a child. *Hagen*, 783 N.W.2d at 217.

Siwani's challenge to the district court's grant of Javed's motion to relocate focuses on the district court's reasoning that the children would benefit from greater educational opportunities and greater ethnic and cultural diversity in Naperville. The district court discussed those reasons when analyzing the second, sixth, and seventh factors. The district court noted both parents' concerns that the older child was not thriving in her school despite high potential, which had caused each parent to believe that a different school would be appropriate. The district court also found that the younger child would benefit from a move to "a highly rated school system such as Naperville's." In addition, the district court found that the children would benefit from living among larger South Asian, Pakistani, and Muslim populations in Naperville.

Siwani contends that the district court erred on the ground that there was no evidence that the Rochester school system is inadequate and no evidence of the demographics in Rochester or Naperville. Siwani asserts that "the emotional and educational benefits of moving to Naperville for the children are vague and uncertain." But Javed introduced lengthy affidavits in which she described the schools and the communities in both Rochester and Naperville. Siwani could have offered contrary evidence of the type he says is lacking, but he did not do so. The district court did not abuse its discretion by determining that greater educational opportunities and greater diversity in Naperville would promote the children's best interests.

11

Siwani compares this case to *Goldman v. Greenwood*, 748 N.W.2d 279 (Minn. 2008), in which a parent sought to relocate to New York City because it would be a better place to practice the family's Orthodox Jewish faith. In that case, the supreme court ultimately ruled against the parent seeking relocation on the ground, among others, that the benefits of relocation were outweighed by the benefits of remaining near the other parent. *Id.* at 284-86. But the supreme court's decision in *Goldman* was an affirmance of the district court's denial of the motion to relocate. *Id.* at 286. In this case, the district court granted the motion to relocate. Because of the deferential standard of review, *Goldman* is distinguishable.

Siwani also challenges other aspects of the district court's best-interests analysis. He has not established that the district court's findings on any factor are "manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *See In re Civil Commitment of Kenney*, 963 N.W.2d 214, 221 (Minn. 2021) (quotation omitted). Consequently, Siwani has not demonstrated that the district court abused its discretion by concluding that relocating to Illinois would promote the children's best interests.

Thus, the district court did not err by granting Javed's motion to relocate.

### IV. Reconsideration

Siwani last argues that the district court erred by denying his request for leave to file a motion to reconsider its decision to grant the motion for relocation.

"Motions to reconsider are prohibited except by express permission of the court, which will be granted only upon a showing of compelling circumstances." Minn. R. Gen.

12

Prac. 115.11. "Motions for reconsideration play a very limited role in civil practice, and should be approached cautiously and used sparingly." Minn. R. Gen. Prac. 115.11, 1997 adv. comm. cmt. Indeed, "a motion for reconsideration cannot introduce new evidence." *State v. Allwine*, 963 N.W.2d 178, 191 (Minn. 2021). We apply an abuse-of-discretion standard of review to a district court's denial of a motion for reconsideration. *In re Welfare of S.M.E.*, 725 N.W.2d 740, 743 (Minn. 2007).

In his letter requesting leave to file a motion for reconsideration, Siwani informed the district court that, after a period of unemployment, he had found a new job in the Twin Cities but intended to retain his Rochester residence. He also stated that Javed had not cooperated with the parenting-time schedule, without providing details. The district court denied Siwani's request.

On appeal, Siwani contends that the district court erred on the ground that his new employment "would substantially impact the outcome of the motion and make the court's decision palpably wrong." The district court made a few references to Siwani's unemployment when granting Javed's motion to relocate but relied primarily on other evidence relating to other issues. As explained above, the district court's decision to grant Javed's motion for relocation was based largely on Javed's evidence that the children would experience greater opportunities in Naperville. To the extent that the district court referred to Siwani's unemployment, the district court stated that Siwani was unlikely to find new employment in Rochester and more likely to find it elsewhere. This reasoning is confirmed by Siwani's new information as much as it is contradicted by it. In any event, Siwani cannot use a motion for reconsideration to introduce new evidence. *See Allwine*,

13

963 N.W.2d at 191. In short, Siwani did not present the district court with "compelling circumstances" for reconsideration. *See* Minn. R. Gen. Prac. 115.11.

Thus, the district court did not err by denying Siwani's request for leave to file a motion to reconsider.

**Affirmed.**