*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-0875**

In Re the Marriage of:

Sarah Lynne Douglass, petitioner,
Respondent,

vs.

Joshua Gary Olson,
Appellant,

County of Clay,
Intervenor.

**Filed March 9, 2026
Affirmed
Johnson, Judge**

Clay County District Court
File No. 14-FA-22-1393

Patti J. Jensen, Galstad, Jensen & McCann, P.A., East Grand Forks, Minnesota (for respondent)

Joshua Gary Olson, Northwood, North Dakota (*pro se* appellant)

Considered and decided by Ede, Presiding Judge; Johnson, Judge; and Harris, Judge.

**NONPRECEDENTIAL OPINION**

**JOHNSON**, Judge

Sarah Lynne Douglass and Joshua Gary Olson are the parents of a seven-year-old child. Upon the dissolution of their marriage, the district court awarded them joint legal

and joint physical custody of the child. Two years later, the district court modified the judgment and decree by awarding Douglass sole legal and sole physical custody of the child. We conclude that the district court did not err in its order granting Douglass's motion for modification. Therefore, we affirm.

**FACTS**

Douglass and Olson were married in August 2015. They have one joint child, a boy who was born in February 2019.

Douglass petitioned for dissolution of the marriage in April 2022. The district court dissolved the marriage in January 2023. In the judgment and decree, the district court awarded the parties joint legal and joint physical custody of the child. The district court also awarded the parties equal amounts of parenting time.

In July 2024, Douglass filed an *ex parte* motion in which she requested several forms of relief, including an order granting her temporary sole legal custody and temporary sole physical custody of the child. Five days later, the district court provisionally denied the motion but scheduled a motion hearing for six days later and ordered Douglass to serve the motion on Olson. After the motion hearing, the district court filed a short order in which it determined that Douglass had established a *prima facie* case for modification and scheduled an evidentiary hearing for late November 2024. The district court ordered that, in the meantime, Douglass would have temporary sole legal custody and temporary sole physical custody of the child. In addition, the district court ordered that Olson would have a right to supervised visits with the child once per week, that he must complete mental-

2

health and anger-management assessments, and that he must provide the assessments to Douglass's attorney and follow the recommendations.

At the evidentiary hearing, Douglass testified in support of her motion and called four other witnesses. Douglass testified about the history of her relationship with Olson, his mental-health history, and her decision to separate from him and seek a divorce. She testified that she once picked up the child from school after he had been staying with Olson and saw a mark on the child's eye, which the child explained by saying that Olson had punched him. She also testified about the child's obsession with violent and scary video games and his general fear after returning to her home after staying at Olson's home. Specifically, she testified that the child was afraid to be alone, did not want to sleep alone, and had "accidents" because he was afraid to use the bathroom.

Douglass's sister testified that, as she and Douglass's mother were playing with the child one day, he said that Olson "punches" him. Douglass's mother testified in a similar way about the same statement. Douglass's mother also testified that she noticed changes in the child's behavior after he returned to Douglass's home after staying at Olson's home in that the child exhibited a fear and preoccupation with horror video games. Douglass's boyfriend testified that he was concerned about the horror video games at Olson's home because the child "would never stop talking about the game" and "was constantly . . . afraid." Douglass's boyfriend also testified that the child once returned to Douglass's home from Olson's home with a bruise on his face. The child's former daycare provider testified that Olson had acted aggressively toward her and that she decided to discontinue being the child's daycare provider solely because of Olson's threatening behavior.

Olson, who was self-represented, testified in a narrative fashion. He testified that his relationship with Douglass began to deteriorate soon after Douglass became pregnant with the child. He testified about his parenting style and the parenting issues about which he and Douglass disagreed. In responding to Douglass's evidence that he had physically abused the child, Olson testified that Douglass previously had denied the existence of domestic violence and noted that the county's child-protection department did not take any action after interviewing him. But Olson did not deny physically abusing the child. Olson testified that Douglass was trying to alienate him from his son, whom he had seen only five times since the temporary modification of custody. On cross-examination, Olson admitted that he allowed the child to watch scary video games. Olson did not call any other witnesses.

At the conclusion of the evidentiary hearing, the district court asked the parties to submit written closing arguments on or before December 31, 2024, on which date the matter would be deemed submitted. On April 1, 2025, the district court filed a 19-page order with findings of fact, conclusions of law, and an order amending the judgment and decree. The district court found that there had been a significant change in circumstances, found that the child was endangered by the then-present environment, considered the twelve statutory best-interests factors, and found that a modification of custody would serve the child's best interests. Consequently, the district court granted Douglass's modification motion and awarded her sole legal and sole physical custody of the child. The district court also ordered that Olson could have supervised visits once per week and, after

completing the programs recommended by his assessments, the opportunity to transition to unsupervised visitation in a phased manner. Olson appeals.

**DECISION**

Olson represents himself on appeal. He filed a brief that raises five issues, which we will address in the order in which he presents them.

## I. Temporary Order

Olson first argues that the district court erred by granting Douglass temporary relief in July 2024 on the ground that her evidence did not satisfy the statutory requirement that the child "is in immediate danger of physical harm." *See* Minn. Stat. § 518.131, subd. 3(b) (2024). In response, Douglass argues that the district court's July 30, 2024 order is not an appealable order because it was only temporary and was superseded by the district court's April 1, 2025 order.

A party may appeal as of right only from a final judgment or from an order specifically identified in rule 103.03 of the rules of civil appellate procedure. *See* Minn. R. Civ. App. P. 103.03; *see also id.*, 1983 cmt. An order modifying child custody is governed by rule 103.03(g), which allows an appeal from "a final order, decision or judgment affecting a substantial right made in an administrative or other special proceeding." Minn. R. Civ. App. P. 103.03(g); *see also Angelos v. Angelos*, 367 N.W.2d 518, 519-20 (Minn. 1985). An order is "final" for purposes of rule 103.03(g) if "the matter is conclusively terminated so far as the court issuing the order is concerned, and the court anticipates no further action on the matter." *In re Estate of Figliuzzi*, 979 N.W.2d 225, 231 (Minn. 2022) (quotations omitted). This court previously has held that an order ruling on

5

a motion for temporary custody of a child is not appealable as of right. *Hennepin Cnty. v. Griffin*, 429 N.W.2d 283, 283-84 (Minn. App. 1988). If a temporary order is not appealable under rule 103.03, it may, in limited circumstances, be reviewable as an "order affecting the order from which the appeal is taken," Minn. R. Civ. App. P. 103.04, if the district court "explicitly used the temporary order for relief as a basis to amend the Judgment and Decree." *Korf v. Korf*, 553 N.W.2d 706, 709 n.1 (Minn. App. 1996).

In this case, the district court's July 30, 2024 order granting temporary custody to Douglass did not finally determine either party's right to custody. The parties' rights concerning child custody were finally determined by the district court's April 1, 2025 order. In light of *Figliuzzi* and *Griffin*, the district court's July 30, 2024 order is not an appealable order. In addition, the temporary order is not reviewable pursuant to rule 103.04 because the district court merely mentioned the temporary order when reciting the procedural history but did not rely on the temporary order as a reason to grant Douglass's motion. *See Korf*, 553 N.W.2d at 709 n.1.

Thus, we may not review the merits of the district court's July 30, 2024 order.

## II. Due Process

Olson also argues that, for two reasons, the district court denied him his right to due process of law.

First, Olson contends that the district court erred by proceeding with the evidentiary hearing in November 2024 even though he had not received Douglass's exhibits and was given only 17 minutes to review her exhibits when they were given to him.

6

This issue was brought to the district court's attention at the outset of the evidentiary hearing, when Douglass's attorney informed the district court that Olson had informed her that he had not received Douglass's exhibits. In response to the district court's inquiry, Douglass's attorney stated that she had served Douglass's exhibits on Olson both by U.S. mail and by e-mail. Olson explained that he had moved to a new residence and had called the court administrator's office to update his address only one day earlier but had not notified Douglass's attorney of the change. He also stated that he still owns the property where he previously resided but had not been there recently to check for mail. In addition, Olson stated that he did not receive the exhibits by e-mail. Further discussion revealed that Douglass's attorney had an incorrect e-mail address on file for Olson.

Douglass's attorney lent Olson her set of paper copies of Douglass's exhibits. The district court called a recess so that Olson could review the exhibits. The recess lasted 17 minutes. When the hearing resumed, the district court asked Olson whether he had had an opportunity to review all of the exhibits, and he responded in the affirmative. The district court inquired further whether Olson would object to the introduction of any of Douglass's exhibits, and Olson responded in the negative. At the end of the first day of the evidentiary hearing, Olson asked the district court whether he could introduce additional exhibits to respond to Douglass's exhibits, and the district court denied his request. Between the first and second days of the evidentiary hearing, Douglass's attorney allowed Olson to take home her paper copies of Douglass's exhibits.

A similar due-process argument was made in *In re Welfare of Child of T.M.A.*, 11 N.W.3d 346 (Minn. App. 2024), in which a parent in a permanency proceeding

7

requested a continuance of the trial because an opposing party had served multiple motions on him only one day before trial and on the day of trial. *Id.* at 361. The district court denied the motion. *Id.* This court rejected the parent's due-process argument for various reasons, including the parent's inability to show that the denial of a continuance prejudiced him "in the preparation or presentation of [his] case so as to materially affect the outcome of the trial." *Id.* at 362 (quoting *In re Welfare of Children of G.A.H.*, 998 N.W.2d 222, 238 (Minn. 2023)).

Unlike the appellant in *T.M.A.*, Olson did not request a continuance, either on the first day of the evidentiary hearing or on the second day, after having had an evening to review Douglass's exhibits. By not requesting a continuance in the district court, Olson has forfeited his argument that the district court erred by not continuing the evidentiary hearing. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988).

In any event, any such argument would be without merit because Olson's untimely receipt of Douglass's exhibits is attributable, in substantial part, to his own failure to inform Douglass's attorney of his change of address. The district court assigned him responsibility for that problem by stating, "The fact that you don't check your mail there, . . . that's on you." Furthermore, Olson makes no attempt to explain in his principal brief how he was prejudiced. In his reply brief, he asserts generally that he "could have" taken several steps if he had received Douglass's exhibits before the hearing, such as calling character witnesses, obtaining testimony concerning the child's behavior at school when the parties had joint custody, and gathering evidence concerning his employment and stability and Douglass's unemployment and instability. But he does not describe the potential evidence

8

with specificity or fully explain what it might have proved. Thus, he has not demonstrated that the absence of a continuance prejudiced him "in the preparation or presentation of [his] case so as to materially affect the outcome of the trial." *See T.M.A.*, 11 N.W.3d at 362 (quotation omitted) (applying *de novo* standard of review).

Second, Olson contends that the district court erred by scheduling the evidentiary hearing for a date approximately four months after the temporary order, during which time he was separated from his son except for five weekly supervised visits. Again, it appears that Olson did not ask the district court to schedule the evidentiary hearing for an earlier date and did not object to the scheduling order after it was filed. By not requesting an earlier evidentiary hearing in the district court, Olson has forfeited his argument that the district court erred by scheduling the evidentiary hearing for a date in November 2024. *See Thiele*, 425 N.W.2d at 582.

Thus, Olson has not established a violation of his right to due process.

### III. Modification of Custody

Olson next argues that the district court erred by ordering a modification of custody on the ground that Douglass's evidence "failed to meet the standards for modification under Minnesota law."

The district court found that modification is warranted under Minnesota Statutes section 518.18(d)(iv), which allows a district court to modify a custody order if "a change has occurred in the circumstances of the child or the parties and that the modification is necessary to serve the best interests of the child" and if "the child's present environment endangers the child's physical or emotional health or impairs the child's emotional

9

development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child." Minn. Stat. § 518.18(d)(iv) (2024); *see also Christensen v. Healey*, 913 N.W.2d 437, 440-41 (Minn. 2018).

Olson contends that the district court erred by finding endangerment on the ground that "the only evidence of [his] alleged abuse" of the child was contained in two exhibits that are equivocal in nature: a photograph of the child and a report prepared by the county's child-protection office, which did not find maltreatment. In response, Douglass contends that Olson omits mention of other evidence supporting the district court's findings. Specifically, Douglass contends that the district court's finding of endangerment is supported by evidence that, during the joint-custody time period, the child was given several diagnoses requiring specialized services, which Olson initially did not accept; evidence that the child's daycare provider discontinued services because of Olson's aggressive conduct, which disrupted the child's stability; evidence that the child stated multiple times that he was being physically abused by Olson; and evidence that Olson exposed the child to video games that caused him to be excessively fearful.

Douglass accurately describes facts that were admitted into evidence. Douglass and two other witnesses testified that the child said that Olson punched him. Both Douglass and her boyfriend testified that the child had a bruise on his face after staying at Olson's home. Douglass and three other witnesses testified that the child was exposed to horror video games at Olson's home and exhibited fearful behavior afterward. Olson did not deny punching the child, admitted to exposing the child to horror video games, and admitted that he disagreed with the child's autism diagnosis for several months after it was made. The

10

child's former daycare provider testified that she stopped caring for the child because Olson acted aggressively toward her.

An appellate court reviews an order modifying custody by considering whether the district court "abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Goldman v. Greenwood*, 748 N.W.2d 279, 284 (Minn. 2008) (quotation omitted). In doing so, we may "set aside a district court's findings of fact only if clearly erroneous." *Id*. Findings of fact are clearly erroneous only if "they are manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *In re Civil Commitment of Kenney*, 963 N.W.2d 214, 221 (Minn. 2021) (quotation omitted). Importantly, clear-error review does not permit an appellate court to engage in fact-finding, reweigh the evidence, make credibility determinations, or reconcile conflicting evidence. *Id.* at 221-22. "Consequently, an appellate court need not 'go into an extended discussion of the evidence to prove or demonstrate the correctness of the findings of the trial court.'" *Id.* at 222 (quoting *Meiners v. Kennedy*, 20 N.W.2d 539, 540 (Minn. 1945)).

> Rather, because the factfinder has "the primary responsibility of determining the fact issues" and the "advantage" of observing the witnesses in "view of all the circumstances surrounding the entire proceeding," an appellate court's "duty is fully performed" after it has fairly considered all the evidence and has determined that the evidence reasonably supports the decision.

*Id.* (quoting *State ex rel. Peterson v. Bentley*, 71 N.W.2d 780, 786 (Minn. 1955)).

In essence, Olson asks this court to reweigh the evidence in his favor. But that would be inconsistent with our clear-error standard of review. *See id.* at 221. To the extent

11

that the district court's finding of endangerment is based on credibility determinations, we have no basis for disagreement. *See id.* at 221-22. We conclude that the findings of fact challenged by Olson are not clearly erroneous.

Thus, the district court did not err in its finding of endangerment.

## IV. Timeliness of Final Order

Olson also argues that the district court erred by not filing its April 1, 2025 order within 90 days.

By statute, "all motions and matters submitted to a judge for a decision in trial . . . shall be disposed of and the decision filed with the court administrator within 90 days after such submission." Minn. Stat. § 546.27, subd. 1(a) (2024). This requirement is "designed 'merely to secure order, uniformity, system and dispatch in public business.'" *Garvey v. Garvey*, 390 N.W.2d 33, 35 (Minn. App. 1986) (quoting *Wenger v. Wenger*, 274 N.W. 517, 518 (Minn. 1937)). An order filed more than 90 days after submission does not necessarily require a remedy, especially if there is no "showing of prejudice." *County of Washington v. TMT Land V, LLC*, 791 N.W.2d 132, 137-38 (Minn. App. 2010).

In this case, the evidentiary hearing occurred on November 26 and 27, 2024. At the conclusion of the second day, the district court asked the parties to file written closing arguments by December 31, 2024, and stated that "then the matter will be under advisement for the court's consideration." The district court filed its order on April 1, 2025, which is one day after the 90-day deadline. Olson has not identified any prejudice arising from the one-day delay. *See id.*

Thus, the district court did not commit reversible error by filing the order on April 1, 2025.

## V. Enforcement of Temporary Order

Olson last argues that the district court erred by not enforcing his right to parenting time under the temporary order.

In response, Douglass argues that Olson forfeited this argument because he did not file a motion to enforce the temporary order or a motion to hold Douglass in contempt. Because Olson did not ask the district court to enforce his right to parenting time under the temporary order, the argument is forfeited. *See Thiele*, 425 N.W.2d at 582.

To the extent that Olson expressed concern about Douglass's compliance with the temporary order in his testimony at the evidentiary hearing, it appears that the district court did not find his concerns to be valid. In discussing the seventh best-interests factor, the district court found that Olson engaged in only five weekly supervised visits, was a no-show for two scheduled visits, and "declined almost all of Ms. Douglass's attempts to schedule visits." The district court's findings on this issue are supported by evidence in the record.

Olson asserts, in a conclusory way, that the district court's non-enforcement of the temporary order "demonstrates judicial bias." It may be presumed that "a judge has discharged her duties properly." *Hannon v. State*, 752 N.W.2d 518, 522 (Minn. 2008). Adverse rulings, by themselves, do not demonstrate judicial bias. *Id*. Rather, bias must be established in light of the record as a whole. *Id*. The record as a whole does not indicate that the district court judge failed to discharge her duties in an unbiased manner.

Thus, the district court did not err by not enforcing Olson's right to parenting time under the temporary order.

**Affirmed.**